(October 30, 1911.)

## JAMES A. FENTON, Respondent, v. BOARD OF COUNTY COMMISSIONERS OF ADA COUNTY, Appellants.

[119 Pac. 41.]

APPEAL—MANDATE—CONSTITUTIONAL AND STATUTORY CONSTRUCTION— TAXATION — DELEGATION OF POWER — COUNTY COMMISSIONERS — MUNICIPAL CORPORATIONS—SCHOOL DISTRICTS—BODY CORPORATE— POWER OF LEGISLATURE—STATUTE MANDATORY.

(Syllabus by the court.)

1. Under the provisions of sec. 1950 of the Rev. Codes, an appeal may be taken from any act, order, or proceeding of the board of county commissioners by any person aggrieved thereby or by a taxpayer of the county.

2.  *Held,* under the provisions of said section that an appeal may be taken from the order of the board making a levy of taxes under the provisions of sec. 65 of the school laws of 1911, Sess. Laws, p. 483.

3.  The case of *Feltham v. Board of County Commissioners,* 10 Ida. 182, cited and distinguished.

4.  *Held,* that it was not reversible error to admit in evidence the stipulation of facts in the case.

5.  Where an appeal is given by law and such appeal is not a plain, speedy and adequate remedy in the due course of law, a resort may be had to *mandamus.*

6.  The provisions of sec. 2 of art. 7 of the constitution which declare "that the legislature shall provide such revenue as may be needful by levying a tax by valuation," etc., applies to the raising of revenue for state purposes.

7.  Under the provisions of sec. 6 of art. 7 of the constitution, the legislature is prohibited from imposing taxes for the purpose of any county, city, town or other municipal corporation, but may by law vest in the corporate authorities the power to assess and collect taxes for all purposes of such corporations.

8.  *Held,* that said section is an inhibition on the legislature from imposing taxes for any of the purposes mentioned in said section.

9.  *Held,* that a school district is not a municipal corporation within the meaning of said section 6, art. 7 of the constitution.

10.  Under the provisions of sec. 1, art. 9 of the state constitution, it is made the duty of the legislature to establish and maintain a general, uniform and thorough system of public, free common schools, and the legislature has a large discretion under the provisions of the constitution in making laws to accomplish said purpose.

11.  Under the provisions of sec. 11 of art. 18 of the constitution, county, township, and precinct officers must perform such duties as shall be prescribed by law.

12.  Under the provisions of the constitution, the legislature had the authority to require the board of county commissioners of each county to levy a tax of not less than five mills nor more than ten mills on each dollar of taxable property in their respective counties for school purposes.

13.  *Held,* that sec. 65 of an act providing a code of laws on education for the public school system of Idaho, etc., Sess. Laws 1911, p. 483, is not repugnant to the provisions of the state constitution, and that its provisions are mandatory.

APPEAL from the District Court of the Third Judicial District for Ada County.   Hon. Carl A. Davis, Judge.

Action by a taxpayer to have a certain order of the board of county commissioners of Ada county, levying and fixing a tax of three mills on the dollar for general school purposes for the county for the year 1911, set aside and annulled. Judgment for plaintiff. *Affirmed.*

D. C. McDougall, Attorney General, J. H. Peterson, and O. M. Van Duyn, Assistants to the Attorney General, C. P. McCarthy, and Martin & Martin, for Appellants.

An appeal from any act of the board of county commissioners will only lie when directly authorized by statute, and unless there is some statute of the state which in express terms authorizes such an appeal, it cannot be taken. (*Feltham v. Board of County Commrs.*, 10 Ida. 182, 77 Pac. 332; *Humbird Lumber Co. v. Morgan*, 10 Ida. 327, 77 Pac. 433; *General Custer Mining Co. v. Van Camp*, 2 Ida. 40, 3 Pac. 22; *Olympia Water Co. v. Thurston Co.*, 14 Wash. 268, 44 Pac. 267.)

Sec. 2, art. 7 of the constitution, which reads in part as follows: ''The legislature shall provide such revenue as may be needful by levying a tax by valuation,'' is a restriction on the power of the legislature, and the legislature cannot authorize the levy of any tax in an amount in excess of what is needful or necessary for the purpose for which it is levied, and any attempt to authorize a levy in excess of such necessity is contrary to this provision of the constitution, and as to such excess the attempted levy would be void. This section of the constitution applies to all tax levies, whether for state, county or other purposes, which may be authorized by the legislature. The county commissioners being the board authorized to make the levy, had the right to investigate under this section of the constitution the necessity in connection with the amount of the levy to be made. (*State v. County of Multnomah*, 13 Or. 287, 10 Pac. 635.)

When the legislature grants the power to tax to another tribunal, it can only be exercised in strict conformity to the terms in which the power is granted, and a departure in any

material part will be fatal to the attempt to exercise it. (*Judge v. Taylor,* 71 Ky. 206; *People v. Lake Erie & W. R. Co.,* 167 Ill. 288, 47 N. E. 518; *Gage v. Graham,* 57 Ill. 144.)

A school district is a municipal corporation within the meaning of sec. 6, art. 7, of the constitution. A school district is a body corporate (Rev. Codes, sec. 614; 1 Dillon, Mun. Corp., 4th ed., secs. 19–27, inc.), and a municipal corporation as that term is used in our constitution. (*Maxon v. School District,* 5 Wash. 142, 31 Pac. 462, 32 Pac. 110; *State v. Grimes,* 7 Wash. 191, 34 Pac. 833; *Commissioners of Public Instruction v. Fell,* 52 N. J. Eq. 689, 29 Atl. 816, 817; *Davis v. Steuben Twp.,* 19 Ind. App. 694, 50 N. E. 1, 4.)

This constitutional provision was adopted from the state of Colorado, and at the time of its adoption the supreme court of that state had held definitely that a school district was a municipal corporation. (*People ex rel. v. County Commrs.,* 12 Colo. 93, 19 Pac. 892.)

If this court should hold that sec. 65, p. 510, Sess. Laws of 1911, is valid and mandatory, then the legislature has, in effect, levied upon all the property of the county a tax of five mills for general school purposes, and the county commissioners, in making the levy, are performing only a ministerial duty. (*People v. County Commrs.,* 12 Colo. 93, 19 Pac. 892; *Hughes v. Ewing,* 93 Cal. 418, 28 Pac. 1067; *Board of Education v. Board of Trustees,* 129 Cal. 603, 62 Pac. 173; *State ex rel. Wyatt v. Ashbrook,* 154 Mo. 375, 77 Am. St. 765, 55 S. W. 627, 48 L. R. A. 265; *Waterhouse v. Board,* 8 Heisk. (Tenn.) 857; *People v. Martin,* 60 Cal. 153; *People v. Lodi High School,* 124 Cal. 694, 57 Pac. 660.)

Wyman & Wyman, for Respondent.

An appeal lies from an order of the board of county commissioners levying a tax. (*Village of Ilo v. Ramey,* 18 Ida. 642, 112 Pac. 126; *Reynolds v. Board,* 6 Ida. 787, 59 Pac. 730; *School District v. Rice,* 11 Ida. 99, 81 Pac. 155.)

The act in question provides that the board ''shall levy a tax of not less than five mills nor more than ten mills on each dollar of taxable property.'' The command is absolute, and in

addition, negative words are used. (Lewis' Sutherland Stat. Const., secs. 611–627; 36 Cyc. 1158, 1159; 11 Cyc. 576; Cooley on Taxation, 280, 476–479; *Pacific E. Co. v. Los Angeles,* 118 Fed. 746; *State v. Russell,* 90 Iowa, 569, 58 N. W. 915, 28 L. R. A. 195; *Koch v. Bridges,* 45 Miss. 247; *Hurford v. City of Omaha,* 4 Neb. 336; *Bladen v. Philadelphia,* 60 Pa. 464; *Smith v. Chicago etc. R. Co.,* 124 Wis. 120, 102 N. W. 336.)

The legislature is directed by the constitutional provision to vest the power in counties, cities, etc., to assess and collect taxes. If the legislature grants this power to the subordinate subdivision of government, it has the right to say by the grant in what manner this power shall be exercised. (*Ex parte Pfirrmann,* 134 Cal. 143, 66 Pac. 205; *Baldwin v. City Council,* 53 Ala. 437; *Vance v. City of Little Rock,* 30 Ark. 435; *State v. Yellowstone Co.,* 12 Mont. 503, 31 Pac. 78; *State v. Hannibal etc. Co.,* 87 Mo. 236; 28 Cyc. 1659, 1660.)

It has always exercised this power of limitation on the amount of tax levies that may be laid by these taxing bodies. (*City of Genesee v. Latah Co.,* 4 Ida. 141, 36 Pac. 701.)

Neither the statutes nor the constitution of this state deal with or treat school districts as municipal corporations. (28 Cyc. 131.)

SULLIVAN, J.—This is an appeal from an order of the board of county commissioners of Ada county, whereby they levied a tax of three mills on the dollar on all taxable property in Ada county for general school purposes. An appeal was taken from said order of the board to the district court, and after a trial before that court the order of the board was set aside, and judgment against the commissioners entered and the cause was remanded to the board with directions to proceed in accordance with law, from which judgment the board of county commissioners appeal. Upon perfecting the appeal to the district court, the board appeared and moved to dismiss the appeal on the ground that the order in question was not an appealable order and that if the appellant had any remedy it was by *mandamus.*

The question of whether an appeal lies from such an order of the board is presented on this appeal. It is provided by sec. 1950 of the Rev. Codes that "An appeal may be taken from any act, order or proceeding of the board by any person aggrieved thereby or by any taxpayer of the county when any demand is allowed against the county, or when he deems any such act, order or proceeding, illegal or prejudicial to the public interests." In the *Village of Ilo v. Ramey,* 18 Ida. 642, 112 Pac. 126, in construing said section 1950, this court said: "That section of the statute, however, authorizes an appeal to be taken by a taxpayer in the county from any order which he may deem prejudicial to the public interest." Said order affects every taxpayer in the county, inasmuch as it fixes a rate of taxation upon all of the property in the county, and is therefore an appealable order under the provisions of said section.

In the case of *Feltham v. Board of County Commissioners,* 10 Ida. 182, 77 Pac. 332, this court held that the statute authorizing appeals from the order of the board of county commissioners does not authorize an appeal from an order of the board of equalization, and that a board of equalization is a constitutional body exercising powers and duties separate and distinct from those exercised by the board of commissioners, and it therefore has no application to this case, as this is an appeal from an order of the board of county commissioners and not from the board of equalization.

The second point raised on this appeal is as to whether the court erred in admitting in evidence the stipulation of facts entered into by counsel. Said stipulation of facts contains much matter that is irrelevant and immaterial in this case, but we do not think it was reversible error to admit it.

It is next contended by the appellants that *mandamus* is the proper remedy and not appeal. We have above held that an appeal would lie from said order of the board, under the provisions of said sec. 1950. An appeal in some cases may not be a plain, speedy or adequate remedy in the due course of law although an appeal might be given by statute, and in such cases a resort may be had to *mandamus.* However,

where an appeal is provided by law, if a party concludes that an appeal will be as effective for his purpose and secure to him an adequate remedy, he may proceed by appeal; and if the plaintiff in this case so concluded, as he evidently did, he certainly had a right to that remedy and could thereby obtain such relief as an appeal affords, even if he is not able to procure thereby all the relief to which he is, in fact, entitled. There is nothing in the contention of appellants that plaintiff's only remedy was by *mandamus.*

The decision of this case involves the proper construction of sec. 65 of an act of the legislature providing a code of laws on education for the public school system of Idaho, etc., Sess. Laws 1911, p. 483, which section is as follows:

"For the purpose of establishing and maintaining public schools in the several counties of the state, the board of county commissioners of each county shall, at the time of levying the taxes for state and county purposes, levy a tax of not less than five (5) mills nor more than ten (10) mills on each dollar of taxable property, in their respective counties, for school purposes. Said taxes must be assessed and collected in each county as other taxes for state and county purposes. For the further support of the public schools, there shall be set apart by the county treasurer of each county and placed in the county school fund all moneys arising from fines, forfeitures or breaches of any of the public penal laws of the state."

Is that section constitutional and mandatory?

It is contended by counsel that the commissioners had the discretion to investigate and make such a levy of taxes as would supply the necessities of the school district (provided they had the authority to make any levy whatever, which is also denied by counsel); and they also contend that when the board exercised that discretion and made the levy and ascertained the amount necessary, that their action therein became final, and cannot be inquired into by the courts, and in support of that contention is cited sec. 2 of art. 7 of the constitution, which reads in part as follows: "The legislature shall provide such revenue as may be needful by levying a tax by valuation," etc. Counsel contend that said section

is a restriction on the power of the legislature, and that the
legislature cannot levy or authorize the levy of any tax in
an amount in excess of what is "needful" or necessary for
the purpose for which it is levied, and an attempt to au-
thorize an excessive levy is contrary to said provision of the
constitution and void.   The part of said section above quoted
commands the legislature to provide such revenue as may be
needful by "levying a tax by valuation," etc., and applies par-
ticularly to revenue for state purposes and contemplates that
only "needful" revenue shall be collected, and that means
sufficient revenue for the purpose for which it was intended,
and the legislature must decide that question so far as state
taxes are concerned.   That section must be construed with
other sections of the constitution.

·Sec. 6 of art. 7 of the constitution provides as follows:
"The legislature shall not impose taxes for the purpose of any
county, city, town, or other municipal corporation, but may
by law invest in the corporate authorities thereof, respec-
tively, the power to assess and collect taxes for all purposes
of such corporation."   That section is an inhibition on the
legislature from imposing taxes for the purpose of any county,
city, town or other municipal corporation, and gives (if neces-
sary to do so) the legislature power to vest in the corporate
authorities of such municipalities the  power to assess and
collect taxes for all purposes of such corporations.   That sec-
tion emphasizes the fact that the provisions of said section
2 of art. 7 authorize the legislature to levy taxes for state
purposes and not for county or municipal purposes.   It is
contended by counsel under the provisions of said sec. 6 of art.
7, that the legislature has no power to authorize or command
the county commissioners to make a tax levy of any kind for
the benefit of the school districts of the respective counties,
for the reason that such districts are municipal corporations
and have the right to levy all needful taxes without any inter-
ference from the board of county commissioners or the legis-
lature.   We are unable to agree with that contention.   We
do not think that a school district is a municipal corporation
within the meaning of that term as used in said section 6.

Dillon, in his work on Municipal Corporations, sec. 24, classifies school districts as *quasi* corporations with most limited powers; and it is said in 28 Cyc. 131, referring to school districts, that "Such bodies, although not 'municipal corporations' nor 'municipalities' in the proper sense, must be construed as falling within such terms in a constitution, statute or other instrument, if such appears to be the intention."

We do not think it was the intention of the framers of the constitution or of the legislature in enacting laws in regard to school districts to treat them as municipal corporations. An act, approved March 11, 1893 (Sess. Laws, p. 198), which is an act entitled, "An act to establish and maintain a system of free schools," declares regularly organized school districts to be bodies corporate. Sec. 34 of said act is as follows:

"Each regularly organized school district in this state is hereby declared to be a body corporate by the name and style of school district number ———— in the county of ————, state of Idaho; and in that name the trustees may sue and be sued, hold and convey property for the use and benefit of such district and make contracts the same as municipal corporations in this state."

The legislature then merely declares school districts to be bodies "corporate" and not "municipal corporations," and the language of said section accentuates the idea that the legislature did not consider them municipal corporations, as it is further provided in said section that such districts may "make contracts the same as municipal corporations." Had the legislature considered them municipal corporations, it would not have provided that such districts could make contracts the same as municipal corporations. The framers of the constitution did not recognize school districts as "municipal corporations." Art. 12 of the constitution of this state is devoted to the subject of municipal corporations, and it nowhere mentions school districts, and we do not think it includes them. While school districts are a part of the county organization, they are subdivisions created by law

for convenience and efficiency in administration, and the constitution provides for a county superintendent of public instruction. (see art. 18, sec. 6), whose duties must be prescribed by law, and under the law such officer is placed in general supervision of the district schools.

In *McCabe v. Carpenter,* 102 Cal. 469, 36 Pac. 836, the court said:

"Public and municipal corporations are both mentioned in the section quoted from the constitution. But I think school districts have generally been considered a part of the county organization, and so they are regarded in the statute under consideration."

In the constitution of California, school districts are not considered municipal corporations, but a part of the county organization. In the states of California, Colorado, South Dakota, Nebraska, Montana and Washington, they have constitutional provisions similar to our own, and in those states, as we understand their statutes, the county commissioners or county supervisors are authorized to levy taxes within minimum and maximum limits, similar to this state, and so far as has been called to our attention every state having constitutional provisions like our own, not only permits district levies but authorizes a levy by the county board for the use and benefit of the school districts.

The constitution of Illinois provides that the corporate authorities of counties, townships, school districts, cities, towns and villages may be vested with power to assess and collect taxes for corporate purposes. It will be noted that school districts are there mentioned, and the legislature is there authorized to vest in such districts the power to assess and collect taxes for corporate purposes. This, however, has not prevented the legislature from authorizing a county levy (Rev. Stats. 1908, p. 1962), and also a district levy (p. 1944). The legislature of this state no doubt has the authority to authorize school districts to assess and collect taxes for district purposes, but as it has not delegated that entire power to such districts, it no doubt concluded that the provisions of sec. 1, art. 7, of the constitution could be more effectively carried

out by requiring the boards of commissioners to levy a tax for that purpose between a minimum and maximum rate as prescribed by law, which we think it had the power to do.

Prior to statehood the legislature had absolute control of the common schools. It established a system of public schools which it no doubt believed to be best suited to the needs of our people, there being no constitutional prohibition against such action. In 1866 the territorial legislature passed an act entitled "An act to establish a common school system, and to provide for the maintenance and supervision of public schools." (3 Terr. Sess. Laws, 122.) The second section of that act provided as follows: "For the purpose of establishing public schools in the various counties of this territory, it shall be the duty of the county commissioners of each county at the time of levying the taxes for county and territorial purposes to levy taxes of not less than one-half a mill nor more than two mills," and that provision remained in force with slight changes until the adoption of our constitution.

The framers of the constitution recognized the great importance of education, and they proposed and the people adopted sec. 1 of art. 9, which is as follows:

"The stability of a republican form of government depending mainly upon the intelligence of the people, it shall be the duty of the legislature of Idaho, to establish and maintain a general, uniform and thorough system of public, free common schools."

Thus we find that since 1866 down to the present time the words "establish and maintain" have been an integral part of our common school system. From our statutes and constitution, there can be no doubt as to the purpose of the people regarding the common schools. The great object sought was the creation of a public school system that would be efficient and enduring; and while that duty was imposed on the legislature by the constitution, a large discretion was given to it in which to "establish and maintain a general, uniform, and thorough system of public, free common schools," and the history of the public schools of this state shows that the

legislature has efficiently and wisely carried out said provision of the constitution in the enactment of general laws for that purpose. Schools cannot be established or maintained without revenue, and there is no inhibition in the constitution on the legislature from delegating the authority to raise revenue for that purpose to proper local officers. The legislative branch of the government has the exclusive power of taxation, except as limited by the constitution, and has authority under the constitution to delegate that power within the provisions of the constitution to municipalities or their officers. (See 2 Dillon, Municipal Corporations, 3d ed., sec. 740.)

As stated in *Robinson v. Schenck,* 102 Ind. 307, 1 N. E. 698:

"It cannot be doubted that the legislature may delegate to local officers the power to make rules for the government of local schools and to levy taxes for their support; and, if this be true, it necessarily results that it is a valid exercise of power to enact a statute for that purpose. If a valid statute is enacted, committing to the local officers the power to govern schools and raise revenue for their maintenance, the legislature does provide for a system of common schools 'by law,' and this is what the constitution requires."

If, under said provisions of the constitution, the legislature has by general law made provisions for the government and support of the common schools by providing suitable machinery and committing the details of its operation to local officers, they then have complied with the provisions of said sec. 1, of art. 9 of the constitution. The legislature might delegate the exclusive authority to the board of trustees of each district to levy the taxes for school purposes within its district, but the legislature has not done so. However, each district may levy a special tax, and the board of commissioners is authorized to levy not less than five mills and not more than ten mills to be apportioned among the districts as provided by law.

It was well known that there were school districts in the state containing a small amount of taxable property, and that it would be impossible without classification to raise

a sufficient amount of money by taxation on such property to maintain the school in such district for the time required by law, and the method adopted by the legislature in requiring the several boards of county commissioners to levy a tax of not less than five mills nor more than ten mills for public school purposes and to divide it among the districts, as provided by law, would assist the weaker districts, and thus enable them to give the children in such districts the required amount of schooling per year.

Article 18 of the constitution is in regard to county organization and government, and sec. 11 of that article provides that county, township, and precinct officers shall perform such duties as shall be prescribed by law.

This court held in *Fremont County v. Brandon,* 6 Ida. 482, 56 Pac. 264, that the powers of the board of county commissioners were statutory and limited, and that such boards can only exercise those powers granted to them by the statute. In *Conger v. Commissioners of Latah Co.,* 5 Ida. 347, 48 Pac. 1064, this court held that the county commissioners have only such jurisdiction and power as is conferred on them by law. The only power that such boards have conferred on them by the laws of this state in regard to levying taxes for common school purposes is contained in said section 65, and the only power given them there is to levy a tax of not less than five mills nor more than ten mills on the dollar. They have no statutory power to levy a school tax of less than five mills, and if they have no statutory power to do so, then they have no authority whatever to do so. As the legislature has granted the board power to levy a school tax of not less than five mills and not more than ten, that is the limit of the board's power. The legislature has enacted a general and uniform law for the purpose of establishing and maintaining the public schools of the state, and has provided by law that the boards of county commissioners of the several counties should perform certain duties in connection therewith, and said general law provides that in order to maintain the public schools of the state, the board of county commissioners of each county shall levy not less than five mills nor more than

ten mills each year for school purposes upon the taxable property of the county, and that is the only power granted to such board in that matter. It is clear that the legislature is not prohibited, either expressly or impliedly, by any provision of the constitution from requiring the several boards of county commissioners to perform such duty, and that it has full power and authority to fix a minimum and maximum limit by which the several boards shall be governed in levying such taxes; and if any district does not receive sufficient money therefrom, then it is left to the district to provide a special tax to cover any deficiency.

The principal difficulty seems to be that a five mill levy will raise more money than many of the districts will need. If that be true, it is unfortunate, but it is not for this court to attempt to deprive the legislature of any power or authority given it by the people. The difficulty in this matter arises out of assessing the property of the state at a much higher value than it has heretofore been assessed without changing the law in regard to the amount of the levy to be made by the boards of county commissioners, and it no doubt has been unfortunate for the people to have the assessed valuation so increased and the fixed levies not changed· to conform therewith; but this court must take the law as it finds it and interpret it according to the clear intention of the lawmaking power. No doubt if the legislature had known that the assessed valuation was going to be so much increased, they would have changed the fixed levies at the last session, but as they had no information of any such increase, no change in the fixed levies was made, and this court has no power to change such levies.

The supreme court of California in discussing the power given to the board of trustees to levy a school tax on lands outside of the city, in *Visalia Savings Bank v. City of Visalia,* 153 Cal. 206, 94 Pac. 888, said:

"The fact that the board of trustees of the city is given power, at the request of the board of education, to levy a tax on lands outside of the city, may afford a plausible excuse for indulgence in some general chatty talk about constitu-

tional principles; but this power given the board of trustees does not violate any existing inhibition of the constitution which has been pointed out to us. In our opinion, therefore, this contested power is not unconstitutional, but is valid and effective.'' (See, also, *Board of Education v. Board of Trustees,* 129 Cal. 599, 62 Pac. 173.)

It was held by the supreme court of Kentucky in *Macklin v. Trustees of Common School District No. 9,* 88 Ky. 592, 11 S. W. 657, that the legislature had the constitutional power to authorize the trustees to levy a tax not exceeding a given rate, and in the course of the opinion the court said:

''It is urged, however, that the legislature had no constitutional power to do so. It is true the legislature must always prescribe the rule under which the taxation is imposed. It must originate the authority. It cannot refer this power to another body, but, having prescribed the rule, it need not fix the exact sum to be raised, or the particulars of the expenditure. It would often be impossible for it to do so wisely, owing to the infinite variety of local needs and interests. Here it authorized the taxation. It provided that it should not exceed a certain sum. It prescribed the rule. It made the law, while the trustees merely give effect to it. One is legislation and the other administration. Thus the legislature may unquestionably authorize the council of a city to order the assessment and collection of a tax not exceeding a certain sum for a certain purpose.''

See, also, *Robinson v. Schenck,* 102 Ind. 307, 1 N. E. 698, which is a leading case upon some of the questions here involved.

It is a familiar and fundamental principle of construction applicable to state constitutions that the legislature of the state has plenary power in regard to all matters of legislation that belongs to or resides in the people, except when restricted by express provisions or necessary implications in the constitution of the state and of the United States.

It is stated by Judge Cooley in his work on Constitutional Limitations, 7th ed., p. 126, as follows:

"In creating a legislative department and conferring upon it the legislative power, the people must be understood to have conferred the full and complete power as it rests in, and may be exercised by, the sovereign power of any country, subject only to such restrictions as they may have seen fit to impose, and to the limitations which are contained in the constitution of the United States."

A state constitution is not a grant of power to the legislature, but a limitation upon powers already plenary.

In *People v. Draper,* 15 N. Y. 532, Chief Justice Denio, speaking for the court, said: "The people in framing the constitution committed to the legislature the whole law-making power of the state which they did not expressly or impliedly withhold. Plenary power in the legislature for all purposes of civil government is the rule. A prohibition to exercise a particular power is an exception."

Council for appellant cite certain decisions to the effect that taxes for municipal purposes should be left to the control of municipal corporations. The rule there laid down is no doubt correct under the constitutions of the states from whence such decisions come, and would be correct under the provisions of sec. 6 of art. 7 of the constitution above quoted, which prohibits the legislature from imposing taxes for the purpose of any county, city, town or other municipal corporation. However, under our constitution and law, a school district is not a municipal corporation, and the constitution makes it the duty of the legislature to establish and maintain free public schools, and in doing so it may require the boards of county commissioners of the several counties to levy and collect a tax therefor. We find no inhibition in our constitution against such legislation, and we find nothing in the constitution prohibiting the legislature from fixing a maximum and minimum amount between which such tax may be levied. The legislature had full power and authority to enact said sec. 65, and it is not repugnant to any provision of the constitution, and is mandatory. Where boards of county commissioners have not complied with the provisions of said sec-

tion, they ought to comply therewith at once or as soon as possible.

The judgment of the district court must therefore be affirmed, and it is so ordered.

Stewart, C. J., concurs.

AILSHIE, J., Dissenting.—I find myself out of harmony with what is said in the majority opinion in this case. It is doubtful if anything that I may say in a dissenting opinion in this case can be of any value in any further proceeding in this matter, and yet the opinion is so violative of what I conceive to be the spirit of our constitution and the power and authority of the political department of the state government to levy and collect taxes, that I feel constrained to make a few general and passing observations on what seems to me to be an unwarranted and unprecedented exercise of judicial power in coercing executive and ministerial officers in the exercise of their discretion in making tax levies.

Before passing to the main question involved, I must pause to say that I do not believe there exists under our statute any such thing as the right to appeal from an order of the board of county commissioners fixing tax levies. Such a right, in my judgment, has never been granted by the legislature, and it was never anticipated that anyone should have the right to appeal from an order fixing the rate of taxation. If this thing can be done, it lies in the power of any taxpayer to lock the wheels of county government by appeals and continued litigation, and in the meanwhile leave the county without revenue or the means of meeting the current expenses of county government. Sec. 1950 of the Revised Codes which grants the right of appeal "from any act, order or proceeding of the board" is found in art. 5 of chap. 2, title 11, of the Political Code. This article is dealing purely with "county finances and claims against the county." This section has reference solely to such acts, orders and proceedings of a board of county commissioners performed by them as such officers, and does not have reference to acts which might

with equal propriety have been imposed upon any other person or official and which have been for convenience imposed upon the board of county commissioners and which acts constitute separate and independent acts from those ordinarily discharged by a board of county commissioners.

This principle was fully and clearly recognized in *Feltham v. Board of County Commissioners,* 10 Ida. 182, 77 Pac. 332. That was an appeal from an order of the board of commissioners when sitting as a board of equalization. This court held in that case that the statute did not authorize an appeal from an order of the board of equalization. In the course of that opinion it was said: "It is also worthy of observation that the board of county commissioners, as such, meet at stated periods for the transaction of the regular county business, but at none of these meetings are they authorized to equalize assessments or to sit as a board of equalization. On the other hand, it is provided by law that they shall meet at a specified time each year as a board of equalization and examine the assessment-roll and equalize the assessments of property within their respective counties."

The foregoing extract is pertinent to the case at bar. Here the board of commissioners are required and directed by statute to meet at a certain time each year for the purpose of making the tax levy. They do not transact any regular county business at this meeting. This session is for a specific purpose, and the legislature at no place has intimated that it intended an appeal might lie from any order made by the board at such time and under such circumstances. The Feltham case was followed and approved by this court in *Humbird Lumber Co. v. Morgan,* 10 Ida. 327, 77 Pac. 433. The case of *Village of Ilo v. Ramey,* 18 Ida. 642, 112 Pac. 126, is not in point, for the reason that hearing petitions for the incorporation of towns and villages and making orders accordingly is made by statute a part of the regular business of a board of county commissioners, and is transacted at the same time and along with other county business at the regular meetings of the board.

There is another reason why the holding of the majority of the court appeals to me as most unreasonable and unsound. The court holds in this case that the legislature has the right to make a tax levy on all'property in the state for common school purposes and that they have properly exercised that power and levied a tax of five mills to the dollar on all the taxable property of the state. It is held that the board of commissioners have no discretion whatever in the matter until after they exceed the minimum of five mills fixed by the legislature. Now, in the case at bar, the board did not make a levy reaching the minimum of five mills, but, on the contrary, made a smaller levy of three mills. Under the holding of the majority of the court, the levy for school purposes up to the extent of five mills is purely a ministerial act to be performed by the board of commissioners, and might as well have been performed by the assessor or county auditor. In any event, there would be no discretion whatever in the matter. If this be true, it is puerile to talk about appealing from such an order. Appeals do not lie from ministerial acts. Appeals only lie from judicial, *quasi* judicial and discretionary acts.

For the foregoing reasons, I have no doubt but that an appeal does not properly lie from an order of the board of commissioners fixing a tax levy, and it is equally clear that the legislature never so intended.

This brings me to the real and vital question involved in this case. Sec. 65 of the school law adopted by the legislature at the 1911 session thereof (1911 Sess. Laws, p. 483) among other things provides as follows: "For the purpose of establishing and maintaining public schools in the several counties of the state, the board of county commissioners of each county shall, at the time of levying the taxes for state and county purposes, levy a tax of not less than five (5) mills nor more than ten (10) mills on each dollar of taxable property, in their respective counties, for school purposes." If this statute is constitutional and mandatory, then of course it is imperative upon the board of county commissioners to levy a tax for school purposes of not less than five mills.

Under the well-recognized rules of construction, this section, if unconstitutional in the mandatory form, might still be held constitutional in a directory form, on the principle that the legislature has never intended to pass an act which would be in violation of the constitution and that no statute ought to be construed as unconstitutional when any other construction is possible. (*In re Gale,* 14 Ida. 761, 95 Pac. 679.)

Before proceeding with a consideration of the merits of this case, I may say that none of the authorities cited are in point, and that they furnish but little light on the subject under consideration, except in so far as they discuss the general subject of tax levies and the constitutional authority therefor. None of the cases cited deal with a constitutional provision identical with our own; neither do any of the cases deal with the same question here raised, or consider it in the same form or light in which it is presented to this court. I have given the cases a rather careful examination in order to gather what information I might from them, and after doing so I deem it needless for me to review or discuss them in this opinion.

It is proper in the very outset of a discussion of this question to recognize and note the plain and palpable fact which confronts us that the legislature has by the foregoing statute made *a direct and positive tax levy for common school purposes.* This statute passes beyond the realm of legislation prescribing the method and procedure for levying and collecting taxes, and *is an absolute levy by the legislature to the extent of five mills on the dollar.*

Now, if this is a levy for state purposes, it is authorized by sec. 2 of art. 7 of the constitution, but if it is a levy for any other purpose, it is prohibited by sec. 6 of art. 7. The latter section provides that, ''The legislature shall not impose taxes for the purpose of any county, city, town, or other municipal corporation, but may by law invest in the corporate authorities thereof, respectively, the power to assess and collect taxes for all purposes of such corporation.'' Now, the opinion of the majority of the court, when stripped of all rhetoric and argument and reduced to its vital essence, holds that a tax

for maintaining the public common schools *is a state purpose, and is a county purpose, and is a school district purpose.* In other words, they hold that the legislature may make a levy as it has done in this case, namely, five mills,—that the board of county commissioners may make a levy of any sum they may see fit between five and ten mills, and that after this and over and above the levy made by the board and the state,— the school district may make an additional levy for the same purpose. I find the majority opinion contains the following sweeping, omnibus statement which really seems to cover everything that the court holds on this subject: "The legislature of this state no doubt has the authority to authorize school districts to assess and collect taxes for district purposes, but, as it has not delegated that entire power to such districts, it no doubt concluded that the provisions of sec. 1 of art. 7 of the constitution could be more effectively carried out by requiring the boards of commissioners to levy a tax for that purpose between a minimum and maximum rate as prescribed by law, which we think it had the power to do." It will be seen from the foregoing extract that the court considers that the legislature has ample power to make tax levies for school purposes and that at the same time it may be bountifully lavish in *delegating* and dividing up that power so that all the counties and school districts may share in that generosity, not only to the extent of paying the assessment made by the state legislature, but if not content with paying the sum so levied, they may make additional assessments to their complete satisfaction.

I have read the majority opinion with great care, but in vain, to ascertain, if possible, the theory on which the legislature is held to possess the power to make a direct levy for these purposes. Art. 7 of the state constitution is devoted to the subject of "finance and revenue," and that article from first to last indicates to my mind the purpose of the framers of the constitution to intrust the subject of levying and collecting taxes to the local and municipal authorities for whose benefit the tax is to be raised and whose citizens will of necessity have to pay such tax. This idea is accentuated and

specifically set forth by sec. 6, above quoted. The framers of the constitution recognized the supervision, management and control of the public common schools as a part of the scheme of county government, and we accordingly find that by sec. 6 of art. 18, the constitution has provided that there shall be elected biennially in each of the several counties of the state a list of county officers, among which is a "county superintendent of public instruction." In pursuance of the recommendation and direction of sec. 1, art. 9, of the constitution, the legislature has provided for the creation and organization of school districts in the several counties, and has provided by general law a method by which the county superintendent and the board of county commissioners may organize school districts. These districts are subdivisions of the county organized for the purpose of more effectively carrying out the purposes of county government and enabling one of the county officers, namely, the county superintendent, to effectively discharge his duties and accomplish the purposes of his office as laid out in the scheme of county government. The management and conduct of the public common schools of the county is as much a part of the plan of county government, as provided for by our constitution, as is the duty of the county auditor or any other officer named by the constitution.

It is well settled that the exercise of the police power, the protection of the health and morals of the people, is a matter for which the county or municipal corporation must levy such taxes as it may be, in the opinion of the local authorities, necessary to raise. It is a well-known fact, which was recognized by sec. 6, art. 9 of the constitution, that education is necessary in order to protect the morals of the people and maintain the "stability of a republican form of government," and so the levy of a tax for this purpose is as much of a county purpose as is the raising of taxes to pay the sheriff and constables of the county, or the surveyor or coroner, and there is no more danger or likelihood of county commissioners failing to discharge their full duty in the one instance than in the other. The people who elect these officers

are just as loyal to the common schools and the educational branch of the local government as they are to any other branch or department of municipal government. It is begging the question, subverting the constitution and slandering the people to say that a minimum levy for school purposes must be made by the legislature in order to insure the maintenance of the public schools. There is no danger but that the county commissioners and the school districts will see to it that sufficient revenue is raised to keep the schools open. All wisdom, patriotism, and love of the public schools is not to be found exclusively and alone in any branch of the government,—there is fully as much remaining among the citizens at home, and they can safely be trusted with the destiny of the district school.

There is a further reason why the power to levy and collect taxes for common school purposes should be and evidently was intended by express provision of the constitution to be left to the county and school district authorities rather than to the state legislature. Sec. 1 of art. 9 of the constitution provides as follows: "The stability of a republican form of government depending mainly upon the intelligence of the people, it shall be the duty of the legislature of Idaho, to establish and maintain a general, uniform and thorough system of public, free common schools." Now, this provision of the constitution, though written in mandatory form, cannot be anything more than directory to the legislature, and no court ever assumed to hold such a provision other than directory, for the reason that no power or authority is known whereby the legislature may be compelled or coerced to perform a duty. This section is merely the declaration of the policy of the state and a recommendation to the legislature to provide for and execute that policy. Sec. 9 of the same article provides that every child of sufficient mental and physical ability shall attend the public schools throughout the period between the ages of six and eighteen years for a time equivalent to three years. It will be seen from these provisions that the constitution admonishes the legislature to provide a system of "public, free common schools." If the duty were imposed

upon the legislature of making these tax levies from session to session, there would be no method of compelling or coercing a levy sufficient to run the schools for any fixed or definite length of time. If, on the other hand, the power rests where the constitution placed it, with the local authorities,—the board of commissioners and the several school districts,— then the legislature may provide, as it has done, that schools shall be conducted in the several districts for at least a given period of time each year, and after so doing the courts may by proper writs command the county and district authorities, should they decline, to levy a sufficient tax each year to raise enough revenue to conduct the schools for the required length of time. The legislature has properly and wisely provided by subd. D of sec. 54 of the school laws of 1911 (Sess. Laws 1911, 504), that the length of time a school shall be taught in the several districts of the state "shall not be less than four months by a legally qualified teacher in a district having less than twenty pupils of school age, nor less than six months in districts having between twenty and seventy-five pupils, inclusive, nor less than nine months in districts having more than seventy-five pupils." It is accordingly made the duty of the county commissioners and school districts to provide sufficient revenue to keep the schools open for the periods provided by law.

It is equally as clear from the provisions of the constitution that it was never intended that either the legislature or any of the counties or municipal corporations of this state should levy and collect a tax from the people of the state in order to pile up a surplus revenue in the state and several municipal treasuries in excess of the current needs for the several purposes of state and municipal government. The legislature can never tell or foresee the value of the property of the state as the same will be assessed for any subsequent year. It therefore follows, as a matter of course, that the legislature is not in a position to and cannot tell what rate of taxation is necessary in order to raise the required amount to maintain the public schools of the several counties of the state for any given year. Again, the legislature is not in

a position to know how many children of school age will be enumerated for any given year in any given county. On the contrary, the county authorities do know. They then know the value of the property as assessed for that year, and they know the number of school children within the county. They may therefore make an intelligent levy sufficient and ample for the purposes of maintaining the schools within the county for the required length of time, and yet not wring from the taxpayers an unreasonable and unnecessary sum to be hoarded away in the public treasuries. Even for the purpose of running the state government, the legislature does not undertake to fix the rate of the tax levy, but requires a gross sum to be raised and leaves the rate to be fixed by the county commissioners after the assessment has been made and the total valuation of the property has been ascertained. This is the essence of local self-government. It brings the question of levying and collecting taxes directly to the authorities selected by the people for that purpose, who are in a position to know the amount necessary and the conditions under which the work must be done.

This case is a patent and crying illustration of the principle I am now discussing. Here the legislature has undertaken to say to the people of this state that they must pay five mills on the dollar for common school purposes, and yet it appears in this case and the companion case that the amount of 2.45 mills in the one county and three mills in the other county will raise all the money necessary for the schools of the counties for the current year, with the exception of about five districts in Ada county which can be supplied by special levies. It appears from the figures submitted that three mills levied in Ada county will raise one and one-half times as much money for common school purposes this year as was raised last year in the same county, and that there are only 500 more school children in the county this year than last. It appears that there are fifty-three school districts in Ada county and that all the districts within the county can maintain their schools for the full period required by law on the revenue raised by the levy of three mills, which

has been made by the commissioners, with the exception of five districts. It appears that last year there were three districts in the county that did not maintain school for the full period required by law. On the other hand, it is asserted that many of the districts have a large sum of money in the treasury to their credit and that some districts have enough money left in the treasury to maintain the schools therein for the full period required by law this year, without the use of any of the money which will be raised by this year's tax levy. This condition exists without any of the districts resorting to the privilege granted them by statute to make *special levies.* It appears that three out of these five districts could not maintain their schools for the full time required by law without making a special levy, even though the full sum of five mills were levied for this present year. In the Kootenai county case, the commissioners offered to prove that the levy of 2.45 mills made by the board would produce sufficient funds to pay the ordinary and necessary expenses of the school for the present fiscal year, and that if the levy be raised to five mills, Independent School District No. 1 of that county would obtain a great advantage over the other districts of the county by reason of the share it would obtain from the county apportionment. Notwithstanding these conditions, this court solemnly says by its decree that the people of these counties must pay at least five mills into the common treasury for school purposes when it appears from the record that at least two mills of this sum will not be needed for the present year except in the five districts above mentioned. This, to my mind, is an alarming and dangerous procedure. It is destructive of local self-government and results in wringing from the hands of the taxpayers of the several counties moneys that are not needed for any public purpose whatever, and imposes on them a burden wholly unauthorized and unjust. It is dangerous, too, for the reason that it is an invasion by the judicial department of the state government of the executive and political branch of the government. It is an unusual and very extraordinary power for a court to exercise in undertaking to direct taxing officers to make

specific and certain tax levies in the face of a record showing that the extra revenue is not needed.

My associates say that "the difficulty in this matter arose out of assessing the property of the state at a much higher value" than heretofore without changing the "fixed levies." I shall not travel beyond the record to speculate on the causes for this situation, but we should not forget that the law prescribing the valuation at which property in this state shall be assessed has been on the statute book for more than twenty years, and has heretofore been held valid and compulsory by the unanimous opinion of this court. (*First National Bank v. Washington County*, 17 Ida. 315, 105 Pac. 1053.) The majority also add the following comment: "No doubt if the legislature had known that the assessed valuation was going to be so much increased, they would have changed the fixed levies at the last session, but as they had no information of any such increase, no change in the fixed levies was made, and this court has no power to change such levies." It should be remembered in this connection that the last session of the legislature repealed sec. 603 of the Revised Codes which fixed a like minimum and maximum levy for school purposes, and instead thereof enacted sec. 65 hereinbefore quoted as a part of the new school code. *It must be assumed, therefore, that they at least had the matter of a school levy and school revenue under consideration.* This illustrates and emphasizes what I am trying to make clear, that the legislature can never foresee what any future assessment will be, and that is especially true in a new and growing state like this. For this very reason, the framers of the constitution intended to leave the fixing of tax levies to the county and municipal authorities where the tax is to be raised.

This is an application to a court of equity to procure a writ commanding and compelling the board of commissioners to enter upon their records a levy of not less than five mills for school purposes. The statute, as well as the rules of this court (sec. 4978, Rev. Codes; Rule 65, Supreme Court), requires that the application must be made upon the affidavit "of the party beneficially interested." The question arises

in my mind how a party can be *beneficially interested* in pro-
curing a writ to compel the levy of an increased tax rate over
that already levied, where it appears that the money is not
needed and that it cannot be used during the current year for
the purposes for which it is sought to have the levy made.
Is it possible that the petitioner here is *beneficially interested*
in paying a heavier tax than that which has been levied
against him?   But if it may be answered that he is *beneficially
interested* in maintaining the public schools, then the ques-
tion arises as to what interest he can have in accumulating
a surplus fund in the county treasury over and above that
necessary to run and maintain the schools for the fiscal year
for which such tax is raised.   The answer to these questions
is obvious.   *He can have no beneficial interest in procuring
such a writ.*   It occurs to my mind that even if it were con-
ceded that the statute here invoked is constitutional and that
it may be construed in the mandatory form, still under the
facts and circumstances of this case, where the rate already
levied raises all the fund necessary for school purposes, a court
of equity is usurping a function which has never been recog-
nized by such courts in compelling the doing of a useless
thing and the performance of an act which accomplishes no
good, but, on the other hand, imposes a grievous burden on
large numbers of taxpayers and citizens.   The judgment of
this court will compel the extraction from the pockets of the
people of over half a million dollars in taxes more than is
needed for any public purpose, and which will not result in
keeping the public common schools in ninety per cent of the
districts open a single day longer this year than they would
be open were this judgment not entered.   There should be
reason and justice in the law and in judgments and decrees
executing the law, and when destitute of those elements, it is
time to halt and ascertain whence we are journeying.

I am satisfied that it was never the purpose of the legisla-
ture to invade the power of the local authorities to levy taxes
for school purposes.   The legislature was only interested in
having the public schools kept open for at least a given length
of time in each district (sec. 54, subd. D, 1911 Sess. Laws,

p. 504), and the rate to be levied was only an incident in the accomplishment of that purpose. One county might be very wealthy and compact and still have but few children of school age, in which case a small tax rate would suffice; another county might be sparsely settled and comparatively poor, but on account of its size have many school districts, and therefore require a much higher rate. This is a matter to be dealt with by the local authorities exclusively.

The tax-rolls for this year have presumably been completed in accordance with the statute (secs. 1724, 1726, Rev. Codes) and delivered to the collectors, who are now receiving payments of taxes and issuing receipts therefor. Under these conditions, I fail to understand what justification the courts have for ordering a further tax levy and the revision of the entire tax-roll of a county, and the taxpayer who has paid his taxes to again seek the collector and pay a further tax for this year. The mischief such an order will work will be irremediable, and this all for the sake of collecting excess revenue. I cannot give my consent to such a procedure.

In my opinion, to construe sec. 65 of the school law as mandatory is to hold it unconstitutional, as violative of sec. 6, art. 7, of the constitution; but to hold it as directory only would render it effective for the purposes for which it was enacted, and at the same time hold it valid and constitutional. Constitutions come direct from the people and are superior to acts of the legislature,—they are adopted for a purpose, and the experience of the American people has demonstrated their importance and wisdom as a safeguard against many unwarranted acts that have found their way through American law-making bodies. Constitutions ought to be obeyed, and this obedience is due from every department of the state government as well as from the citizen. It is one of the high and important duties of courts to declare the constitution and to so construe acts of the legislature as to bring them within the purview of the constitution, if possible, but if not possible to do so, then to declare them void without regard to the whims or caprice of any person or class.