(Nos. 6907, 6909, 6905. July 26, 1941)

HENRY A. SCANDRETT, WALTER J. CUMMINGS and GEORGE I. HAIGHT, Trustees of the property of CHICAGO, MILWAUKEE, ST. PAUL AND PACIFIC RAILROAD COMPANY, a corporation, Appellants, v. SHOSHONE COUNTY, a municipal corporation; GLYNN D. EVANS, county treasurer, ROY O. SMITH, C. Y. GARBER and DANIEL MURPHY, county commissioners, and NATALIE FERGUSON, county superintendent of public instruction, Respondents.

HENRY A. SCANDRETT, WALTER J. CUMMINGS and GEORGE I. HAIGHT, Trustees of the property of CHICAGO, MILWAUKEE, ST. PAUL AND PACIFIC RAILROAD COMPANY, a corporation, Appellants, v. SHOSHONE COUNTY, a municipal corporation; GLYNN D. EVANS, county treasurer, ROY O. SMITH, C. Y. GARBER and DANIEL MURPHY, county commissioners, and NATALIE FERGUSON, county superintendent of public instruction, Respondents.

NORTHERN PACIFIC RAILWAY COMPANY, a corporation, Appellant, v. SHOSHONE COUNTY, a municipal corporation; GLYNN D. EVANS, county treasurer, ROY O. SMITH, C. Y. GARBER and DANIEL MURPHY, county commissioners, and NATALIE FERGUSON, county superintendent of public instruction, Respondents.

(116 Pac. (2d) 225)

H. J. Hull, for Appellants Scandrett et al. Verner R. Clements, for Appellant Northern Pacific Railway Company.

Albert J. Graf, Prosecuting Attorney, and James A. Wayne, for Respondents.

AILSHIE, J.—Three separate actions were instituted by the respective appellants, named in the caption hereof, for the recovery of taxes paid to Shoshone county under protest. The taxes were exacted and collected under the provisions of sec. 32-406, as amended by chap. 249, 1939 Sess. Laws, p. 612. The statute as amended is as follows:

"Section 32-406. TAX LEVY—CERTIFICATION—LIMIT—COLLECTION—SPECIAL FUND. . . . *Whenever any school district shall lapse under the provisions of Section 32-327, Idaho Code Annotated, the County Superintendent of Public Instruction shall, until the entry of the order annexing the territory embraced in said school district to an adjacent or contiguous organized school district under the provisions of Section 1 of this act,* on or before the first day of September . . . . *of* each year, certify to the clerk of the Board of County Commissioners the amount of money which, when augmented . . . . *by the* estimated proceeds of any apportionment of general school funds to accrue thereto during the ensuing year, will be sufficient to pay, to districts entitled thereto, tuition of all persons of school age residing in such *unorganized or lapsed* district, as estimated by . . . . *said* County Superintendent *of Public Instruction,* and thereafter . . . . the Board of County Commissioners, *at the time of making the annual county levy,* shall levy, *in addition to the levy provided for in Section 32-328, Idaho Code Annotated,* upon all taxable property in such *unorganized or lapsed*

district, not exempt from taxation, a tax sufficient to pay such estimated claims, which tax shall be certified to the County Auditor as other tax levies are certified, extended on the tax rolls of the county against property in such *unorganized or lapsed* district, and collected as other property taxes are collected. The proceeds of such tax levy shall be placed *in the treasury of such county* in a special fund to be known as 'Unorganized *or Lapsed* School District No. ...... Fund.' *However, in no event shall the Board of County Commissioners each year make a levy under the provisions of this section of less than three mills, and whenever the proceeds of such tax levy is in excess of an amount sufficient to pay all tuition claims against such fund, the balance remaining in said fund after the payment thereof shall be placed by the County Treasurer in the 'County School Fund.'* "

The italicized portion of the statute quoted constitutes the *new, changed,* and *added* matter, in the amendatory section, that was not in the original section as found in the annotated code of 1932.

The plaintiffs paid the tax exacted under protest and these actions were subsequently instituted to recover the amounts paid.

Demurrers were sustained to the several complaints and the plaintiffs declined to further plead; judgments were entered in favor of the county.

It is urged by the appellants, in the outset, that the county commissioners never acquired jurisdiction to levy the tax, for the reason, as alleged by the complaints, that the several preliminary steps required by the statute, as conditions precedent to the levy of the tax, were never performed. To this contention, respondents say: "it must here be further admitted that the levy is sustainable only as the mandatory levy required by the last sentence in Section 32-406, as amended." The part of that sentence material to this issue reads: "However, in no event shall the Board of County Commissioners each year make a levy under the provisions of this section of less than three mills." If this statute is valid, it would seem to follow, from the language used, and the admissions of counsel, that the performance of the preliminary steps prescribed would be merely directory and not mandatory, to the

limit at least of the minimum 3-mill levy prescribed by the act. The view we take, of other aspects of the case, renders it unnecessary for us to further consider this contention.

The two principal grounds urged for a reversal of the judgments are:

(1)    That, since there were no children of school age within the unorganized territory, there existed no necessity and no legal cause for levying a special tax, under sec. 32-406, I. C. A., as amended by chap. 249, Sess. Laws 1939;

(2)    That certain provisions of sec. 32-406, I. C. A., as amended by chap. 249, Sess. Laws 1939, are unconstitutional and void, because of being in conflict with secs. 5 and 6, Art. VII of the Constitution.

Addressing ourselves to the first objection, we are reminded that, in construing statutes, we should assume that the legislature intended to enact a valid and constitutional law and for that reason should give the act as favorable interpretation as possible. (*In re Gale,* 14 Idaho 761, 95 Pac. 679; *Grice v. Clearwater Timber Co.,* 20 Idaho 70, 77, 117 Pac. 112; *Continental Life Ins., etc. Co. v. Hattabaugh,* 21 Idaho 285, 304, 121 Pac. 81; *Geo. B. Wallace, Inc., v. Pfost,* 57 Idaho 279, 292, 65 Pac. (2d) 725; *Robinson v. Enking,* 58 Idaho 24, 27, 69 Pac. (2d) 603.) We must then assume, that the purpose of providing for the levy of this special tax on "unorganized school districts" was to provide revenue for payment of tuition for children of school age residing in the district. That the legislature so intended, is emphasized by sec. 32-408, I. C. A., as amended by chap. 249, 1939 Sess. Laws, p. 614, which provides as follows:

"No moneys shall be drawn or paid out of any unorganized *or lapsed* school district fund for any other purpose than the payment of the tuition chargeable against persons residing in such unorganized *or lapsed* district except for the purpose of refunding excessive or illegal taxes, or rectifying errors in accounting, *or paid into the County School Fund as provided in Section 32-406 as amended by this act.*"

Now it stands admitted, that there are no children

of school age within this unorganized district and no outstanding claims. It must necessarily follow, that if the object or purpose of the tax never arises, then the grounds for levying the tax must fail. The people can not be taxed except for a lawful purpose. Here there is no lawful purpose; therefore no lawful tax.

This brings us to the second ground urged for reversal of the judgment. It appears that the legislature, at its 1939 session, was not content to leave the levying of a special tax, in unorganized districts for school purposes, to the county commissioners, *as trustees of the district,* but arrogated to itself the power to declare the levy of such a tax, up to 3-mills, *compulsory and mandatory* irrespective of the number of school children or the absolute lack of any children; and after arbitrarily levying a 3-mill tax in such districts, regardless of any necessity therefor, provided for turning the tax money so raised over to the county at large, to be placed in the county treasury to the credit of the "County School Fund"; (last sentence, sec. 32-406, as amended).

The amendment carries on its face two patent vices: First, the legislature; in violation of sec. 5, art. VII of the constitution, has attempted to levy a special tax on *unorganized school districts only* without extending such tax to all of the "same class of subjects within the territorial limits, of the authority levying the tax." (*Idaho County v. Fenn Highway District,* 43 Idaho 233, 253 Pac. 377.) Under this amended statute, (chap. 249, 1939 Sess. Laws) the legislature has attempted to also authorize the county commissioners, *as trustees* of the unorganized school district, to raise the *legislative* levy above three mills on the property within the *unorganized* district; and to turn the money received therefrom into the general "County School Fund," for county purposes, contrary to the prohibition of the constitution and the authority of the Fenn Highway case above cited.

Sec. 32-702 (amended, 1939 Sess. Laws, chap. 241, p. 582), provides for the annual meeting in common and joint common school districts, and for the determination of the amount of taxes to be raised by special levy; and these, of course, may differ in different districts. Sec.

61-806, I. C. A., provides for the levy by the board of county commissioners for "tax for general school purposes." The tax levy, by the county commissioners, must be uniform on all the taxable property throughout the county; whereas, the tax levied by the school districts is only required to be uniform on all the taxable property within the particular district making the levy.

In *Idaho County v. Fenn Highway District*, 43 Idaho 233, 240, 253 Pac. 377, this court, after quoting from sec. 5, art. 7 of the constitution, said:

"This, in effect, requires that if a tax is to be levied by a county, it shall be uniform upon the same class of subjects within the county. Thus, if there is any ground for the interest of a county in the spending of the money, it must be a county purpose to authorize the levy, and the levy must be uniform throughout the county....

"Counties are recognized by the constitution as subdivisions of the state, taxing units for raising money for county purposes, and if money is so raised by a county by a tax levy, it must be a county tax. To hold that a county may be given the right to levy a tax for a purpose is to concede that that purpose is a benefit to the county at large rather than to a district alone. If that is the case, then the principle protected by the constitution is that such tax shall be uniform, and no subterfuge can accomplish the division of such levy in any other way."

The *Humbird Lumber Co. v. Kootenai County* case, 10 Idaho 490, 79 Pac. 396, is not thought to be in point here. The present case differs from that case in this: There the tax was levied on all the taxable property situated "within the territorial limits of the authority levying the tax"; whereas, here the tax is levied only "upon all taxable property in such unorganized school district." The tax is levied by the *legislature* up to three mills and any increase above the 3-mill levy is made by the *county commissioners*. So, it is readily seen that, under this statute, the tax is not *"uniform" upon* all the property "within the territorial limits of the authority levying the tax."

The fact that the several organized school districts of the county may each levy a special school tax (sec. 32-702, as amended by chap. 241, 1939 Sess. L., p.

582, and sec. 61-806, I. C. A.) affords no reason or authority for the *legislature* levying a special tax on the several *unorganized* school districts throughout the state; nor does it afford reason or authority for the county commissioners levying a special tax on the property within an unorganized district *for the benefit of the whole county,* when it is admitted that it will not be a benefit or useful to anybody or property within the territory taxed.

The judgments are reversed and the causes are remanded, with direction to overrule the demurrers and take further proceedings in accordance with the views here expressed. Costs to appellants.

Budge, C. J., and Holden, J., concur.

GIVENS, J., dissenting—The statute under consideration requires a levy of three mills whether there be any school children in the unorganized district or not. The organized districts pay the county tax (Sec. 61-806 I. C. A.) and their own levies (Sections 32-702-7, I. C. A.) while the unorganized districts, if appellant be correct that only if school children reside therein may such tax be levied, pay only the county levy. Thus the unorganized districts pay only one levy, the organized districts two. It is urged however that if the tax be levied irrespective of whether there are any school children residing therein it amounts to a county tax being levied on only a part of the county for the benefit of another part of the county, relying on *Idaho County v. Fenn Highway District,* 43 Ida. 233, 253 P. 377.

If the territory embraced in the unorganized district, to help bear its proportionate share of the cost of maintaining the schools of the entire county, should be attached to and made a part of one or more organized districts the result would be similar to that existing herein, except that then only the organized district to which such territory was attached would benefit, whereas under the present law, if valid, all districts in the county benefit.

The Constitution requires that a "general, uniform and thorough system of public, free common schools" be maintained. (Art. 9, Sec. 1) Absent the present statute the

territory in the unorganized districts obviously does not bear its proportionate burden of the county school system by reason of the levy (not county) in the organized districts and none in the unorganized districts. In an attempt to bring about a fair adjustment this statute does not result in double taxation nor impose a tax on part of the county for the benefit of another part but equalizes the burden by imposing part of the burden of those parts of the county having school children on the part of the county not having school children. Such result was in substance approved in *Fenton v. Board of County Commissioners,* 20 Ida. 392, 402, 119 P. 41:

"Thus we find that since 1866 down to the present time the words 'establish and maintain' have been an integral part of our common school system. From our statutes and constitution, there can be no doubt as to the purpose of the people regarding the common schools. The great object sought was the creation of a public school system that would be efficient and enduring; and while that duty was imposed on the legislature by the constitution, a large discretion was given to it in which to 'establish and maintain a general, uniform, and thorough system of public, free common schools,' and the history of the public schools of this state shows that the legislature has efficiently and wisely carried out said provision of the constitution in the enactment of general laws for that purpose. Schools cannot be established or maintained without revenue, and there is no inhibition in the constitution on the legislature from delegating the authority to raise revenue for that purpose to proper local officers. The legislative branch of the government has the exclusive power of taxation, except as limited by the constitution, and has authority under the constitution to delegate that power within the provisions of the constitution to municipalities or their officers. (See 2 Dillon, Municipal Corporations, 3rd ed., sec. 740.)

"As stated in *Robinson v. Schenck,* 102 Ind. 307, 1 N. E. 698:

" 'It cannot be doubted that the legislature may delegate to local officers the power to make rules for the government of local schools and to levy taxes for their support;

and, if this be true, it necessarily results that it is a valid exercise of power to enact a statute for that purpose. If a valid statute is enacted, committing to the local officers the power to govern schools and raise revenue for their maintenance, the legislature does provide for a system of common schools 'by law' and this is what the constitution requires.'

"If, under said provisions of the constitution, the legislature has by general law made provisions for the government and support of the common schools by providing suitable machinery and committing the details of its operation to local officers, they then have complied with the provisions of said sec. 1, of art. 9 of the constitution. The legislature might delegate the exclusive authority to the board of trustees of each district to levy the taxes for school purposes within its district, but the legislature has not done so. However, each district may levy a special tax, and the board of commissioners is authorized to levy not less than five mills and not more than ten mills to be apportioned among the districts as provided by law.

"It is well known that there were school districts in the state containing a small amount of taxable property, and that it would be impossible without classification to raise a sufficient amount of money by taxation on such property to maintain the school in such district for the time required by law, and the method adopted by the legislature in requiring the several boards of county commissioners to levy a tax of not less than five mills nor more than ten mills for public school purposes and divide it among the districts, as provided by law, would assist the weaker districts, and thus enable them to give the children in such districts the required amount of schooling per year.

.    .    .    .    .    .    .    .    .    .

"The principal difficulty seems to be that a five mill levy will raise more money than many of the districts will need. If that be true, it is unfortunate, but it is not for this court to attempt to deprive the legislature of any power or authority given it by the people.

.    .    .    .    .    .    .    .    .    .

"Counsel for appellant cite certain decisions to the effect that taxes for municipal purposes should be left to the control of municipal corporations. The rule there laid down is no doubt correct under the constitutions of the states from whence such decisions come, and would be correct under the provisions of sec. 6 of art. 7 of the constitution above quoted, which prohibits the legislature from imposing taxes for the purpose of any county, city, town or other municipal corporation. However, under our constitution and law, a school district is not a municipal corporation, and the constitution makes it the duty of the legislature to establish and maintain free public schools, and in doing so it may require the boards of county commissioners of the several counties to levy and collect a tax therefor."

And in *Independent School Districts, etc. v. Common School Districts,* 56 Ida. 426, 432, 55 P. (2) 144:

"It is true that the school district is a mere agency of the state. (*Common School Dist. No. 61 v. Twin Falls Bank & T. Co.,* 50 Ida. 711, 716, 4 Pac. (2) 342.) As such however, it is charged with the sovereign duty of maintaining the schools within its particular territory of the state and of receiving funds and property and managing, controlling and expanding the same in the interest of public education. In this respect and for this *purpose* the school district is the agent of the state in its particular territory. It would, therefore, amount to neglect of its duty and an unfaithful stewardship for it to fail or neglect to claim and demand the public funds and property belonging to its territory, and meant and intended for application in furthering the educational advantages of the children of that particular community of the state. In this respect and to this end, the officers of the school district are charged with the sovereign duty of furthering and promoting the cause of general education. (Const., art. 9, sec. 1; *Fenton v. Board of County Commrs.,* 20 Ida. 392, 402, 119 Pac. 41; *Howard v. Independent School Dist.,* 17 Ida. 537, 540; 106 Pac. 692.)

"Since every school district within the state is a public corporation and an arm of the state, charged with these duties, it seems clear that one district may maintain an

action against another, where by either mistake, fraud or inefficiency of public servants, the one district has received and expended for educational purposes, in its territory, more than its share of the public fund; and the other district by reason thereof has received less than its share; and we have not been able to discover any valid reason why such an action may not be maintained. Indeed, if a district cannot prosecute such an action, then clearly there is no way in which the wrong or misapplication of funds may be corrected or redressed. Nor is it a sufficient answer to say that, since the one district has received more money than it was entitled to, and has in fact expended it *for school purposes* within its district during the year for which collected and apportioned, it cannot be required to withhold from a future apportionment or future taxes enough money to reimburse the district which suffered by loss of the portion to which it was legally entitled."

The county school fund (Sec. 61-806 I. C. A.) is apportioned to the different districts. (Sec. 32-806 I. C. A. as amended, 1937 S. L. Ch. 174, p. 285.) Thus the act under consideration is merely an added method of equalizing the burden of schools on all taxable property. *Myers v. Board of Education,* (Ohio) 192 N. E. 393.

*Idaho County v. Fenn Highway District, supra,* is distinguishable because there the county was trying to force the highway district, a separate unit and a municipal corporation, not an arm of the county, to levy taxes.

Thus instead of lack of uniformity, the opposite results. Since school districts are not municipal corporations Article 7, Section 6 does not apply. *Fenton v. Board of County Commrs., supra,* at 392, 108 A. L. R. 579n. *In re Rogers, Randall & Pitzen,* 56 Ida. 521, 57 P. (2) 342; *Barton v. Alexander,* 27 Ida. 286, 148 P. 471; *Idaho Gold Dredging Co. v. Balderston,* 58 Ida. 692, 721, 78 P. (2) 105.

The requirement that the county officers take certain preliminary steps before the imposition of the levy is directory and not mandatory (*Northern Pacific Railway Co. v. Shoshone County,* 63 Ida. 37, 116 P. (2) 221).

The fact that the county commissioners are also trus-

tees of unorganized districts is a mere incident. There is no prohibition against county commissioners additionally being school trustees.

The judgment should be affirmed.

I am authorized to say that MORGAN, J., concurs in the above views.