(May 12, 1908.)

In re GALE.

[95 Pac. 679.]

CONSTITUTIONAL LAW—LICENSE TAX—BILLIARD-TABLES—DOING BUSINESS.

1. Sec. 1645, Rev. Stat., as amended by act of March 12, 1903 (Sess. Laws 1903, p. 104), providing that a license tax shall be paid by the ''proprietor or keeper of a billiard-table,'' must be read and construed in the light of and in connection with sec. 2, art. 7 of the constitution, and the statute will be held to apply only to proprietors or keepers of billiard-tables who are using the same in ''doing business'' as that term is employed in the constitution.

2. Where a statute may constitutionally operate upon certain persons or in certain cases, and was evidently not intended to conflict with the constitution, although its general language might extend to persons upon whom the constitution prohibits such legislation operating, the statute will not be held unconstitutional merely because there are persons or isolated cases comprehended by the general language of the statute on which it cannot constitutionally operate or to whom it cannot constitutionally apply. In such case the statute will be deemed constitutional, and will be construed not to apply to the excepted persons or cases on the ground and upon the principle that courts are bound to presume that the legislature did not intend to violate the constitution or pass an unconstitutional act.

3. Where a statute can be reasonably and fairly construed in connection with the constitution so as to render the statute valid and effective, without doing violence to the evident legislative intent, it will be so construed and the legislative act will be upheld and enforced.

4. Where the proprietor or keeper of a saloon keeps and maintains a billiard-table in connection therewith, it will be held that such table is kept and used in ''doing business'' within the meaning of sec. 2, art. 7 of the constitution, although no separate or

specific hire is exacted or charge made for the playing of games on such table. The incidental advantage and adjunct which the table affords to the business in connection with which it is used will be held sufficient to bring it within the purview of "doing business."

(Syllabus by the court.)

APPLICATION for writ of *habeas corpus.* Demurrer to the petition sustained; *writ denied and petition dismissed.*

G. G. Pickett, for Appellant.

Texas and Arkansas have statutes in every respect like Idaho.

If in this case the keeping of the billiard-table was an "occupation," the occupant was subject to a license tax. If it was kept for amusement and not with a view to derive profit, then it is not subject to a license tax. (*Tarde v. Benseman,* 31 Tex. 277; *Stevens v. State,* 2 Ark. 291, 35 Am. Dec. 72; *Chicago v. Collins,* 175 Ill. 445, 67 Am. St. Rep. 224, 51 N. E. 907, 49 L. R. A. 411, 412; *Weil v. State,* 52 Ala. 19; *City of Covington v. Woods,* 98 Ky. 344, 33 S. W. 84; *Livingston v. Paducah,* 80 Ky. 657; *Farwell v. Chicago,* 71 Ill. 269.)

Wm. E. Stillinger, for Respondent.

Construing the section of the statute in connection with the constitution which authorizes the legislature to enact it, the plain meaning of the statute would be that any person keeping a billiard-table as a business must pay a license tax thereon of five dollars per quarter. (*State v. Smiley,* 65 Kan. 240, 69 Pac. 199, 67 L. R. A. 903.)

No other deduction can be made from the facts in this case than that it is a clear attempt to evade the provisions of the law by keeping a billiard-table for profit and personal gain as a part of the defendant's business, without paying a license therefor.

Under our statute the word "business" includes nearly all the affairs in which either an individual or a corporation can be an actor, whether for profit or not. (*Stevens v. State,*

2 Ark. 291, 35 Am. Dec. 72; *Wright v. State,* 41 Tex. Cr. App. 200, 53 S. W. 640; *Sears v. West,* 1 Murph. (N. C.) 291, 3 Am. Dec. 694.)

AILSHIE, C. J.—The petitioner is the proprietor of the Hotel Moscow in the city of Moscow, Latah county. In connection with the hotel business the petitioner runs a saloon, which is kept in the same building and adjoining the office room of the hotel. In the front room of the saloon petitioner keeps a billiard-table on which, according to the stipulated facts, any and all persons are permitted to play without charge. There is a partition with swinging doors between the front room where the billiard-table is kept and the adjoining room in which the bar is kept, and over which liquor and cigars are dispensed for pay. Petitioner has paid his state and county tax on this billiard-table and his other property, and has paid the necessary license for running and maintaining his saloon or bar. He has neglected and refused, however, to pay any license tax on this billiard-table as provided for by sec. 1645, Rev. Stat., as amended by act of March 12, 1903, Sess. Laws 1903, p. 104.

That part of sec. 1645, Rev. Stat., which is involved in this case and which is necessary to be considered is as follows:

"License must be obtained for the purposes hereinafter named, for which the tax collector must require the payment as follows: . . . .

"3. From each proprietor or keeper of a billiard, pool or bagatelle table, or any other kind of table, on which games are played with ball and cue, for each table five dollars per quarter; and for a bowling-alley five dollars per quarter for each alley; but no license must be granted for a term less than three months."

The petitioner, G. W. Gale, was arrested and convicted for violation of the law and sentenced to pay a fine, or, on failure to do so, to be imprisoned in the county jail. He applied to this court for a writ of *habeas corpus,* and on stipulation between petitioner and the county attorney of Latah county, the issuance of the writ was waived and demurrer to the petition was filed, and the questions therein involved

are presented on demurrer to the petition. The first proposition presented is that the act of March 12, 1903, is unconstitutional and void, for the reason that it is in conflict with sec. 2, art. 7 of the state constitution. That section reads as follows:

"The legislature shall provide such revenue as may be needful, by levying a tax by valuation, so that every person or corporation shall pay a tax in proportion to the value of his, her or its property, except as in this article hereinafter otherwise provided. The legislature may also impose a license tax (both upon natural persons and upon corporations, other than municipal, doing business in this state); also a per capita tax; Provided, The legislature may exempt a limited amount of improvements upon land from taxation."

It will be observed that the constitution authorizes the legislature to impose a license tax both upon natural persons and corporations, other than municipal, *doing business* in this state. This provision of the constitution therefore limits the power of the legislature to impose a license tax to those persons and corporations that are "doing business." It is conceded by counsel for the state here that the legislature would have no power or authority to impose a license tax upon the mere right or privilege of owning or holding property, nor would it have the right to impose a license on one owning and keeping a billiard-table in his home for amusement or recreation. The power to impose such a tax extends only to the business as contra-distinguished from the ownership or possession or right of ownership of the property. The objection that is made to this statute is that it imposes such license tax on "each proprietor or keeper of a billiard . . . . table." The petitioner claims that the legislature went beyond its constitutional power and authority in attempting to impose such a license tax upon all keepers or proprietors of such property, instead of imposing it upon those only who may use the tables in doing business, and that therefore the act must be held invalid. If the general language used in this statute is to be read and understood independent of and separate from the constitution itself, then it is undoubtedly

too comprehensive, and covers a class of persons that cannot be subjected to such tax. Counsel for the state insists, however, with very much reason and logic, that this statute must be read in the light of, and in connection with, the constitution, and that it will be presumed that the legislature in passing the act intended to enact a constitutional statute and to keep within its constitutional power and authority, and that consequently the statute was written with sec. 2 of art. 7 of the constitution in mind, and was made and intended to apply only to "proprietors or keepers of billiard-tables" who were using them in "doing business."

In examining the authorities on this proposition we find considerable conflict, but that conflict does not exist so much among the decisions of the state courts as it does between the decisions of the courts of the several states and a line of federal decisions. In *Re Opinion of the Justices*, 41 N. H. 553, the supreme court of New Hampshire was considering a statute which in terms was broader than that permissible under the constitution and an act of Congress, and covered a class of persons that it was not competent for the legislature to deal with. In discussing the purpose and intent of the legislation and the rule of construction and interpretation in such case, the court said:

"If the intention of any part of the act, determined upon settled principles of legal interpretation, were to obstruct or impede the exercise or enjoyment of any right secured by the constitution of the United States, or by any constitutional law of the United States, that part would be unconstitutional. But if the intention thus determined were merely to establish, regulate or guarantee rights or privileges consistent with the constitution and laws of the United States in a mode not in conflict with either, and if the act would constitutionally apply to a large class of cases that do and will exist, it would not be rendered unconstitutional by the fact that, literally construed, its language might be broad enough to extend to a few exceptional cases where it could not constitutionally apply; since, upon settled principles of construction, the latter are as fully and effectually excepted by necessary implica-

tion as if the statute had contained an express proviso that it should not extend or apply to such cases. The rule of construction universally adopted is that, when a statute may constitutionally operate upon certain persons, or in certain cases, and was not evidently intended to conflict with the constitution, it is not to be held unconstitutional merely because there may be persons to whom or cases in which it cannot constitutionally apply; but it is to be deemed constitutional, and to be construed not to apply to the latter persons or cases on the ground that courts are bound to presume that the legislature did not intend to violate the constitution."

In *State v. Smiley*, 65 Kan. 240, 69 Pac. 199, 67 L. R. A. 903, the supreme court of Kansas had under consideration an anti-trust statute which was more sweeping and comprehensive than was permissible by the constitution. The supreme court, in passing on the question, said:

"In immediate connection with the subject just discussed the question arises whether, assuming the general phraseology of the statute to be comprehensive of classes of persons who cannot be rightfully included therein, the whole enactment becomes nullified thereby. The general doctrine is that only the invalid parts of a statute are without legal efficacy. This is qualified by the further rule that, if the void and valid parts of the statute are so connected with each other in the general scheme of the act that they cannot be separated without violence to the evident intent of the legislature, the whole must fail. These rules are of every-day enforcement in the courts."

The Kansas court, in considering the diversity of opinion between the state and federal courts, pointed out the fact that the federal courts have to do principally with acts of Congress, and that in determining whether such acts are constitutional they have to deal with them in the light of the powers of Congress; in other words, that Congress has absolutely no power of legislation other than that specifically granted by the constitution of the United States, while, on the other hand, a state legislature has absolute and plenary power of legislation except as restricted by the constitution.

After considering these two propositions at some length, the court said:

"A power which is specifically limited cannot be allowed to express itself in general terms, and a limitation of the general language to the specific power will not be implied. On the other hand, however, a power which is unlimited, except as specifically prohibited, may express itself in general terms, and the specific instances of limitation will be implied as provisos. This furnishes a rational basis of discrimination between rules of interpretation applicable in the respect under consideration to federal and state legislation. Congress cannot legislate on all subjects, as can a state legislature. Therefore its enactments must show on their face their application to that which, as matters of constitutional limitation, they should be confined."

In passing to the final conclusion that court reached as to the rule it would follow, it is said:

"We construe the general words of our statute to be comprehensive only of those cases which are the rightful subjects of legislation of the kind in question. However, we disavow doing so merely in order to shelter the statute under the rule mentioned, but because the ancient established and wise canon of interpretation requires it to be done. Sporadic and anomalous cases indicating to the contrary may be found, as they may be found to the contrary of every settled accepted doctrine of the law; but the rule that the general words of statutes will be restricted in application to cases presumptively within the legislative intent has been so long accepted as a cardinal principle that its occasional denial, even by the most learned of courts, fails utterly of adverse impression."

Counsel for petitioner in this case cites *Williamson v. United States,* 207 U. S. 425, 28 Sup. Ct. 163, 52 L. ed. 000, in which the supreme court of the United States, in considering the scope of a statute, held that an act of Congress authorizing the commissioner of the general land office to establish rules and regulation for the enforcement of the statute cannot be held to have authorized him to adopt rules and

regulations purely destructive of the rights granted by the act of Congress, nor which would amount to additional legislation on the subject. This decision was evidently intended as a wholesome rebuke to departmental and bureaucratic legislation, and was most likely meant by the highest court of the land as a notice to those departments that they must act within the law instead of attempting themselves to make laws. No such question arises here. In fact, there is no similarity whatever between the principle of law presented in that case and the construction of the statute under consideration here. We are fully satisfied that the act of the legislature authorizing the imposing of a license tax on the keepers and proprietors of billiard-tables is constitutional and valid, and that it should properly be construed in connection with the constitution as covering only those cases contemplated by the constitution and excluding those on which the legislative authority could not act.

This statute was under consideration by this court in *State v. Jones,* 9 Ida. 693, 75 Pac. 819. In that case the table was kept in very much the same manner as the table petitioner is maintaining. No charge was made for its use, and it was kept as a kind of an adjunct or leader to the saloon business. The contention was there made that its use was free, and it was therefore not kept in doing a business within the meaning of the constitution. While this question was not squarely passed upon in so many words in that decision, yet it was necessary for the court to hold that the maintenance of the table was a business within the meaning of the constitution in order for the court to arrive at the conclusion it reached in the case. We do not think it is essential to the collection of a license tax on such a table, used under the circumstances existing in this case, that the proprietor of the table charge any separate and specific compensation for the use of the table. A billiard-table may be used independently of any other business—may be used for hire or free; it may also be used in connection with other business, such as the saloon business. The fact that it is used in connection with the saloon business clearly brings it within the provisions of the consti-

tution in the sense of "doing business." The saloon business might run without the billiard-table, and so might the table be run without the saloon. The fact, however, that either one may run and do business without the other and may pay a license therefor does not prevent both being carried on together, and the fact that the billiard-table is used as a bait for custom for the saloon and no charge is made for the use of the table does not take it out of the category of doing business. If the proprietor of this table had it in his residence, and there used it for amusement and recreation and invited his friends or guests to use it, it would be on quite a different footing. There it would be kept and used purely as a pastime and for amusement and recreation at a place where no business is carried on,—at a place other than a business house,—and would clearly not be subject to a license tax. The proprietor cannot, however, escape taxation under the guise or pretext that while he has it in his saloon and place of business, it is kept for the amusement and recreation of his customers and not for the purpose of hire or doing business.

Counsel for petitioner has cited a number of cases where it was attempted to impose license tax wherein the courts have held that the object or thing on which the tax was imposed could not be termed or classed *business,* and among these cases is the case of *Hewin v. City of Atlanta,* 121 Ga. 723, 49 S. E. 769, 67 L. R. A. 795. In that case the city of Atlanta attempted to impose a special license tax upon merchants who kept trading stamps and gave them out to their customers in the retail mercantile business. The court there held that such a tax could not be imposed on the trading stamps or one keeping them, for the reason that such a business could not exist alone and separate from some mercantile or trading business or concern; that the trading stamps were of no value or use except as they could be used by the merchant in connection with the business of selling goods, and that therefore the stamp business was only a part of the mercantile business which the merchant might use and employ in his business or not as the case might be. The court held

that the mercantile business could exist without the use of the trading stamps, but that the trading stamp business could not exist independently and could not constitute a business of itself separate and apart from the mercantile business. The distinction between that case and the one at bar appears at once.

The other cases cited by counsel are readily capable of similar distinction from the case at bar. We conclude that the statute in question is constitutional, and that the petitioner was maintaining a billiard-table in his business as contemplated by section 2 of article 7 of the constitution, and that he was properly convicted. The demurrer to the petition is sustained, and the writ will be denied and the petition dismissed.

Sullivan, J., and Stewart, J., concur.