Points Decided.

(February 3, 1912.)

# CONTINENTAL LIFE INSURANCE AND INVESTMENT COMPANY, a Corporation, Plaintiff, v. I. C. HATTABAUGH, as Insurance Commissioner of the State of Idaho, Defendant.

[121 Pac. 81.]

LIFE INSURANCE CORPORATIONS—REGULATION OF DOING BUSINESS WITHIN THE STATE—CONSTITUTIONAL PROVISIONS—POWER OF THE LEGISLATURE—FORM OF POLICY.

(Syllabus by the court.)

1.  A corporation is not a citizen within the meaning of the constitution of the United States which prohibits the enactment of laws which abridge the privileges and immunities of a citizen of the United States, and has no privileges or immunities secured to citizens against legislation.

2.  A corporation is a creature of the laws of the state or sovereignty where created, and has no legal existence beyond the limits of such state or sovereignty, except such as are granted to such corporations by the laws of the states in which such corporations apply for permission to carry on their business, and the assent of the state or sovereignty may be upon such terms and conditions as such state or sovereignty may deem proper, and such conditions may be prescribed by law.

3.  It is within the power of the legislature of this state to enact a statute which prescribes the conditions upon which life insurance companies may do business within the state, and to prescribe the form and conditions of the policies issued by such companies.

4.  Subds. 1, 7 and 10 of sec. 42, chap. 228, Sess. Laws 1911, p. 732, which regulate and fix the rate of interest to be charged by life insurance companies doing business within the state, upon loans of money upon the policy and forbearances in the collection of dues upon the policy, are provisions which are required to be made a part of the policy of life insurance, and are not independent conditions or agreements.

5.  The form of policy involved in this case and presented by plaintiff to the defendant for approval, and upon which permission to do business is asked, in its terms contains the provisions required by the statute, except the rate of interest is designated to be six

per cent instead of five per cent, as designated in the statute, and these conditions and privileges are granted by the company to the insured and are an integral and essential part of the contract of insurance made between the company and the insured.

6.    Whether or not loaning money on life insurance policies is peculiar to life insurance companies will not render the provisions of a statute void, which require life insurance companies to make such provisions a condition in the policy of insurance issued by a life insurance company, as a condition for such insurance companies doing business in the state.

7.    Where a policy of life insurance makes one of the conditions of the policy that the company will loan money upon the policy issued by the company, at a fixed rate of interest and upon indulgences and forbearances, the company cannot successfully contend that such part of the agreement thus made is not a part of the insurance policy, and therefore the company issuing the same is not governed by a statute regulating the right to do business within the state by such insurance company.

8.    There is no provision in the state or federal constitution which in any way limits the power of the legislature in making a classification of persons or corporations writing insurance within the state of Idaho, and placing in a separate class those persons or corporations who loan money upon policies written, and limit the charge to be made for the use of such loans to five per cent, although such statute makes no limitation of the rate of interest to be charged upon money loaned upon other securities, except the general statute of the state regulating the rate of interest.

9.    Subds. 1, 7 and 10 of sec. 42, chap. 228, Sess. Laws 1911, p. 732, do not violate the provisions of the constitution of this state or of the United States, in that such provisions permit the taking of property without due process of law, for the reason that such provisions relate to the regulation of doing business within the state after July 1, 1911, a date subsequent to the passage of the act, and in no way affect any property, or right of contract, prior to said date.

10.    The fact that other states have passed laws regulating the doing of life insurance business within such states, which are different from the laws of the state of Idaho, is no reason for this court to hold that a regulation made by the legislature of the state of Idaho is unconstitutional, unfair or unreasonable.

11.    The requirement of the statute that a life insurance policy shall contain as a part of the policy a table of cash, paid-up and extended insurance options available under the policy for a period up to the age of ninety-six years, is not an unfair or unreasonable re-

quirement, and may be enforced by the insurance commissioner of the state.

12. This court will follow the general rule that every reasonable construction must be resorted to by the court in order to sustain a statute and uphold its constitutionality.

An original application to this court for a writ of mandate.

Martin & Martin, and B. F. Neal, for Plaintiff.

The statute necessarily interferes with the right of contract. (*Lochner v. New York,* 198 U. S. 45, 3 Ann. Cas. 1133, 25 Sup. Ct. 539, 49 L. ed. 937; *Minnesota v. Barber,* 136 U. S. 313, 10 Sup. Ct. 862, 34 L. ed. 455; *Brimmer v. Rebman,* 138 U. S. 78, 11 Sup. Ct. 213, 35 L. ed. 862; *Yick Wo v. Hopkins,* 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. ed. 220; *Ritchie v. People,* 155 Ill. 98, 46 Am. St. 315, 40 N. E. 454, 29 L. R. A. 79, 82, and cases cited; *Adair v. United States,* 208 U. S. 161, 13 Ann. Cas. 764, 28 Sup. Ct. 277, 52 L. ed. 437, and cases cited; *Chicago v. McGuire,* 219 U. S. 549, 31 Sup. Ct. 259, 55 L. ed. 259.)

Any action of the legislature which decreases the value of the property of its owner arbitrarily is taking his property "without due process of law." (*Smyth v. Ames,* 169 U. S. 466, 18 Sup. Ct. 418, 42 L. ed. 819, 841.)

A corporation is a person within the meaning of the fourteenth amendment. (*Southern Ry. Co. v. Greene,* 216 U. S. 400, 30 Sup. Ct. 287, 54 L. ed. 536, 540; *Gulf C. & S. F. R. Co. v. Ellis,* 165 U. S. 150, 17 Sup. Ct. 255, 41 L. ed. 666.)

The legislature has power to classify subjects for legislation, but this classification for legislative purposes must have some reasonable basis upon which to stand. (*Vermont Loan & Trust Co. v. Whithad,* 2 N. D. 82, 49 N. W. 318, 320; *Brown-Forman Co. v. Kentucky,* 217 U. S. 563, 30 Sup. Ct. 578, 54 L. ed. 883.)

Arbitrary selection cannot be justified by calling it classification. (*Gulf, C. & S. F. R. Co. v. Ellis, supra; Cotting v. Kansas City Stockyards Co.,* 183 U. S. 79, 22 Sup. Ct. 30, 46 L. ed. 72; *Connolly v. Union Sewer Pipe Co.,* 184 U. S. 540, 22 Sup. Ct. 431, 46 L. ed. 679; *Pembina Consol. Silver*

*Min. & Mill. Co. v. Pennsylvania,* 125 U. S. 181, 8 Sup. Ct. 737, 31 L. ed. 650; *Magoun v. Ill. Trust & Sav. Bank,* 170 U. S. 283, 18 Sup. Ct. 594, 42 L. ed. 1037.)

There being a constitutional provision forbidding special or local laws upon the subject of interest, the legislature was without power to pass a special law on the subject of interest. (Lewis' Sutherland Stat. Const., 2d ed., sec. 191, pp. 340, 341; *State v. Supervisors,* 25 Wis. 339; *State v. Riordan,* 24 Wis. 484; *State v. Dousman,* 28 Wis. 541; *Pasadena v. Stimson,* 91 Cal. 238, 27 Pac. 604; *Crabb v. State,* 88 Ga. 584, 15 S. E. 455; *Henderson v. Koenig,* 168 Mo. 356, 68 S. W. 72, 57 L. R. A. 659; *State v. Anslinger,* 171 Mo. 600, 71 S. W. 1041.)

A special law is one which relates and applies to particular members of a class, either particularized by express terms of the act or separated by any method of selection from the whole of the class to which the law might, but for such limitations, be applicable. (Lewis' Sutherland Stat. Const., 2d ed., pp. 351, 352; *State v. Cooley,* 56 Minn. 549, 58 N. W. 150.)

If it is limited to particular parts or designated parts of a class, it is special. (Lewis' Sutherland Stat. Const., 2d ed., 352; *Lippman v. People,* 175 Ill. 101, 51 N. E. 872; *In re Sohncke,* 148 Cal. 262, 113 Am. St. 236, 7 Ann. Cas. 475, 82 Pac. 956, 2 L. R. A., N. S., 813; *Harper v. Galloway,* 58 Fla. 255, 19 Ann. Cas. 235, 51 So. 226; *Rodge v. Kelley,* 88 Miss. 209, 117 Am. St. 733, 40 So. 552, 11 L. R. A., N. S., 635.)

D. C. McDougall, Attorney General, O. M. Van Duyn, and J. H. Peterson, Assistants, for Defendant.

A corporation is not a citizen within the meaning of the provisions of the federal constitution, and hence has not privileges and immunities secured to citizens against state legislation. (*Paul v. Virginia,* 8 Wall. (U. S.) 168, 19 L. ed. 357; *Orient Ins. Co. v. Daggs,* 172 U. S. 557, 19 Sup. Ct. 281, 43 L. ed. 552.)

The state may distinguish, select and classify subjects of legislation, and necessarily the powers must have a wide range.   Classification suffices if it is practical, and is not reversible unless palpably arbitrary.   (*Orient Ins. Co. v. Daggs, supra; Magoun v. Ill. Trust & Sav. Bank,* 170 U. S. 283, 18 Sup. Ct. 594, 42 L. ed. 1037; *Mo. Pac. R. R. Co. v. Mackay,* 127 U. S. 205, 8 Sup. Ct. 1161, 32 L. ed. 107; *Minn. & St. L. R. R. Co. v. Beckwith,* 129 U. S. 26, 9 Sup. Ct. 207, 32 L. ed. 585.)

The right of the state to prohibit corporations, either foreign or domestic, from doing business within the state, or as to regulating them to any degree which they see fit, has been settled.   (*Hooper v. California,* 155 U. S. 648, 15 Sup. Ct. 207, 39 L. ed. 297; *Waters-Pierce Oil Co. v. Texas,* 177 U. S. 29, 20 Sup. Ct. 518, 44 L. ed. 657; *Hancock Mutual Life Ins. Co. v. Warren,* 181 U. S. 73, 21 Sup. Ct. 535, 45 L. ed. 955.)

Equal protection of the law is not denied to a corporation because greater liabilities are imposed upon it than upon other corporations.   (*Fidelity Mutual Life Ins. Co. v. Mettler,* 185 U. S. 308, 22 Sup. Ct. 662, 46 L. ed. 922; *Fidelity & Casualty Co. v. Allibone,* 15 Tex. Civ. App. 178, 39 S. W. 632.)

There is such a difference between the insurance business and other kinds of business as to justify and not make repugnant to the equality clause the regulation of said company. (*Continental Fire Ins. Co. v. Whittaker & Dillard,* 112 Tenn. 151, 105 Am. St. 916, 79 S. W. 119, 64 L. R. A. 451.)

Every reasonable construction must be resorted to in order to save a statute from unconstitutionality.   (*Hooper v. State, supra; Parsons v. Bedford,* 3 Pet. (U. S.), 433, 7 L. ed. 732; *United States v. Coombs,* 12 Pet. (U. S.) 72, 9 L. ed. 1004; *Grenada County Supervisors v. Brown,* 112 U. S. 261, 5 Sup. Ct. 125, 28 L. ed. 704; *Presser v. Illinois,* 116 U. S. 252, 6 Sup. Ct. 580, 29 L. ed. 615.)

STEWART, C. J.—This is an original action for a writ of mandate.   The plaintiff is a life insurance company, organized under the laws of another state, and is a foreign corpora-

tion. The defendant is the insurance commissioner of the state of Idaho. The case is submitted upon an agreed statement of facts. In the statement of facts it appears that in June, 1911, the plaintiff tendered to the defendant, for his approval and filing in his office, a certain form of policy of insurance, of which the defendant disapproved and refused to receive or file.

The form of policy presented by plaintiff and asked to be filed and approved by the defendant complied with the requirements of the laws of the state as provided by chapter 228, Sess. Laws 1911, p. 732, except in the following particulars: First, that the said policy provided for interest at the rate of six per cent per annum "for the number of days of grace elapsing before the payment of the premium," instead of interest "at a rate not in excess of five per cent per annum," as provided in said act; second, that the said policy did not conform to subd. 7 of sec. 42 of said act, in that it provides for loans on the sole security of the policy at the rate of six per cent per annum instead of "at a rate not in excess of five per cent per annum," as provided in said section; third, that said policy did not conform to subd. 10 of said sec. 42, in that it provided for interest at the rate of six per cent per annum on the amount due as a condition of reinstatement instead of interest "at a rate not in excess of five per cent per annum," as provided in said act; fourth, that as and for a full and substantial compliance with subd. 8 of sec. 42, said form of policy so tendered contained tables showing in figures the cash, paid-up and extended insurance options available under the policy each year upon default in premium payments during the period of twenty years, that the value of these options were equivalents based upon the reserves in the table of mortality, and rate of interest assumed, and for such period, and that said tables complied with the requirements of sec. 42 of said act.

By this action the plaintiff seeks to compel the defendant to approve and file the form of policy submitted by the plaintiff. The portions of sec. 42 of chap. 228, p. 732, Sess. Laws 1911, involved in this case, provide:

"No policy of life or endowment insurance shall be issued or delivered in this state, until a copy of the form thereof has been approved in writing by the insurance commissioner; nor shall any policy be issued or delivered after said date unless it contains in substance the following provisions:

"First, that the insured is entitled to a grace of one (1) month, within which the payment of any premium after the first year may be made, during which period of grace the policy shall continue in force; the company may impose an interest charge not in excess of five per cent per annum for the number of days of grace elapsing before the payment of the premium, and in case the policy becomes a claim during said period of grace, the amount of such premiums, with interest and any deferred instalments of the annual premium, may be deducted from the face of the policy in settlement. . . . . Seventh, that not later than the third anniversary of the policy, the holder of the policy, upon a proper assignment thereof to the company, shall be entitled to borrow of the company on the sole security of the policy an amount not to exceed the cash surrender value thereof; any indebtedness to the company and interest in advance at an annual rate, not exceeding five (5) per cent, may be deducted from the amount of the loan. Said provision shall include such other conditions as, in conformity to the laws of Idaho, the company will impose when the application for the loan is made. . . . . Tenth, that the holder of a policy shall be entitled to have the policy reinstated at any time within three (3) years from the date of any default in payment of premium, upon the production of evidence of insurability satisfactory to the company and the payment of all overdue premiums and any other indebtedness to the company upon said policy with interest at a rate not exceeding five (5) per cent per annum."

And also, "Eighth, tables showing in figures the cash, paid-up, and extended insurance options available, under the policy each year upon default in premium payments, during the premium payment period of the policy. The value of these options shall be equivalents based on the reserves at the table of mortality and rate of interest assumed, which shall be

named in the policy, less a specified surrender charge, not exceeding two and one-half (2½) per cent of the amount of the insurance.''

It will thus be seen that subds. 1, 7 and 10 relate to the interest charge which shall be made by the company during days of grace and interest on policy loans and interest on reinstatement of policies, and such provisions present the same questions for consideration under the contentions made by the plaintiff.

It is argued by counsel for plaintiff that the above portions of sec. 42 of chap. 228 of Sess. Laws 1911, in so far as the rate of interest is concerned, are matters concerning loans and interest for use and forbearance of money, notwithstanding the fact that such transactions are referred to and called by other names, and that such transaction of loaning money and collecting interest for use and forbearance of money cannot be regulated by legislation, and that the legislature of this state in enacting such provisions has violated both the state and federal constitutions. It is first contended that these various provisions contravene, first, sec. 1, art. 1 of the constitution of this state, in that there is an inalienable right in every citizen to acquire, possess and protect property; second, sec. 13 of art. 1 of the state constitution, in that ''no person shall be . . . .. deprived of his . . . . property without due process of law''; third, sec. 21, art. 1 of the constitution, in that ''this enumeration of rights shall not be construed to impair or deny other rights retained by the people''; fourth, sec. 19, art. 3 of the constitution which forbids the passage of local or special laws ''regulating the interest on money''; fifth, it is also argued that they violate the fifth amendment to the constitution of the United States which provides, ''no person shall be . . . . deprived of his . . . .· property without due process of law''; sixth, that they violate the fifth amendment, in that it attempts to take private property for public use without just compensation; seventh, that they violate sec. 1 of the fourteenth amendment to the constitution of the United States, in that it is an attempt to make and enforce a law which abridges the privileges and immunities of a cit-

izen of the United States, to wit, the state of Utah; eighth, that they violate sec. 1 of the fourteenth amendment to the constitution of the United States, in that it is an attempt to deprive the plaintiff of property without due process of law; ninth, that they violate sec. 1 of the fourteenth amendment to the constitution, in that they deny equal protection of law to the plaintiff; tenth, that they violate the ninth amendment to the constitution of the United States, in that they restrict the right reserved to citizens of the various states to freely contract.

These constitutional objections will be grouped and considered under the following classification: First, do the provisions of the law above referred to abridge the privileges or immunities of citizens of the United States? Second, do such provisions deny equal protection of the laws, or the right to contract? Third, do such provisions deprive persons of property without due process of law? Fourth, are such provisions fair and reasonable?

First objection, whether the provisions abridge the privileges or immunities of the citizens of the United States: It is a sufficient answer to this objection to say that a corporation is not a citizen within the meaning of the various constitutional provisions above enumerated, and therefore it has no privileges or immunities secured to citizens against legislation. In other words, corporations are creatures of the law, and are subject to legislative control and regulation, and in enacting laws providing conditions for doing business within the state, they do not possess the privileges and immunities secured to a citizen. (*Paul v. Virginia,* 8 Wall. (U. S.) 168, 19 L. ed. 357; *La Fayette Ins. Co. v. French,* 18 How. (U. S.) 404, 15 L. ed. 451; *Blake v. McClung,* 172 U. S. 239, 19 Sup. Ct. 165, 43 L. ed. 432; *Orient Ins. Co. v. Daggs,* 172 U. S. 557, 19 Sup. Ct. 281, 43 L. ed. 552.)

Second, do such provisions deny equal protection of the laws or the right to contract? Under this classification we shall consider many of the objections presented by the plaintiff. While these objections refer to several different constitutional provisions, they all relate to the general subject

of legislative power to regulate and control the doing of business within the state of corporations, and especially of life insurance companies, and the nature and character of life insurance policies, and the right to contract. The statute regulating "the insurance companies and fraternal and benevolent orders and societies and others doing business therein" is general, and applies alike to all persons and corporations, whether such person is a resident within the state or a resident of another state, and to corporations whether organized under the laws of this state or organized under the laws of another state. It in no way grants privileges or immunities to citizens residing in one state over citizens residing in another state, or corporations organized under the laws of one state over corporations organized under the laws of another state, but does provide that all persons, whether residents of or without the state, and all corporations whether organized under the laws of this state or some other state, and all persons and corporations doing life insurance business within the state shall comply with and observe the conditions contained in such statute regulating insurance companies doing business within the state. We think that the law is well established, and has been exhaustively treated and discussed in the opinions of the courts of the states of the Union, as well as the supreme court of the United States, that a corporation is a creature of the laws of the state or sovereignty where created, and has no legal existence beyond the limits of such state or sovereignty except such as are granted to such corporations by the laws of the state in which such corporations apply for permission to carry on their business, and that the assent of the state or sovereignty, where permission is granted to a corporation applying to do business in such state or sovereignty, may be upon such terms and conditions as such state or sovereignty may deem proper, and that such conditions may be prescribed by law. The general rule, we think, is well stated in the case of *Waters-Pierce Oil Co. v. Texas,* 177 U. S. 28, 20 Sup. Ct. 518, 44 L. ed. 657, as follows:

"The plaintiff in error is a foreign corporation, and what right of contracting has it in the state of Texas? This is

the only inquiry, and it cannot find an answer in the rights
of natural persons. It can only find an answer in the rights
of corporations, in the power of the state over them. What
those rights are and what that power is has often been de-
clared by this court. A corporation is the creature of the
law, and none of its powers are original. They are precisely
what the incorporate act has made them, and can only be
exerted in the manner which that act authorizes. In other
words, the state prescribed the purposes of the corporation
and the means of executing those purposes. The purposes
and means are within the state's control. This is true as to
domestic corporations, and has even a broader application to
foreign corporations." (*Fidelity Mutual Life Assn. of Phila-
delphia v. Mettler,* 185 U. S. 308, 22 Sup. Ct. 662, 46 L. ed.
922; *Hooper v. California,* 155 U. S. 648, 15 Sup. Ct. 207, 39
L. ed. 297; *Waters-Pierce Oil Co. v. Texas,* 177 U. S. 28, 20
Sup. Ct. 518, 44 L. ed. 657; *John Hancock Mutual Life Ins.
Co. v. Warren,* 181 U. S. 73, 21 Sup. Ct. 535, 45 L. ed. 955;
*Security Mutual Life Ins. Co. v. Prewitt,* 202 U. S. 246, 6
Ann. Cas. 317, 26 Sup. Ct. 619, 50 L. ed. 1013; *Opinion of the
Justices,* 97 Me. 592, 55 Atl. 828.)

In the case now on hearing, however, counsel for plaintiff
concede that the state has the power to regulate the writing
of insurance, and may prescribe the form and conditions
of the policy in so far as such form and conditions are peculiar
to life insurance, but contend that the state has no right
to prescribe the form or conditions of a life insurance policy
except in so far as it relates to matters peculiar to life in-
surance, and that when it attempts to prescribe the terms
upon which a life insurance company shall loan its funds, the
legislature to that extent goes beyond the limits of its power
and interferes with constitutional rights guaranteed for free
contract. In other words, it seems to be the contention of
plaintiff in this case that the provisions of the statute whereby
the rates to be charged by the company during days of grace,
and interest on loans, and interest on reinstatement of poli-
cies, are not conditions peculiar to life insurance, but relate
entirely to contracts providing for the loan of money, and are

local and special in that such provisions regulate the interest to be charged for the use of money upon loans made upon the policy, while upon loans made upon other securities the rate to be charged for the use of money is fixed by law at seven per cent when no contract is made, and that twelve per cent may be contracted for. To this objection there are two answers: First, the statute in its terms makes such conditions a part of the insurance policy and contract of insurance, and requires that where loans are made upon policies issued by the company, a certain rate of interest may be charged upon loans made upon the policy of insurance, and that such requirement is made by law peculiar and applicable to the particular insurance; second, by the contract, or the form of policy for insurance, presented by plaintiff to defendant for approval. The policy presented by plaintiff is what is known as a standard policy, and is the form generally used by life insurance companies writing general life insurance of the same character and kind as does the plaintiff, and upon its face the company promises to pay to a beneficiary named a certain sum of money upon proof of the death of the insured, and as a consideration for such promise of the company, the insured promises that his application for the policy shall be a part of the consideration for the promise of the company, and that as a further consideration for such promise, he agrees to pay to the company a certain sum of money upon the delivery of the policy, and further promises to pay a certain sum on certain dates for a continuance of the insurance to the date of the death of the insured; and then follow certain privileges and provisions given and granted by the company as a part of the consideration for the promises made by the insured, and such privileges and provisions are made a part of the contract. The "privileges and provisions" referred to are printed on the second page of the policy, and among others are the following:

"4. REINSTATEMENT. Should this policy lapse or become void by reason of the non-payment of any premium or of any indebtedness or interest thereon, said policy may be reinstated at any time after such non-payment of premium

upon the insured furnishing evidence of insurability satisfactory to the company, and paying all indebtedness and arrears of premiums with interest thereon, at a rate not exceeding *six per centum per annum.*"

"8. LOANS. After three full annual premiums have been paid hereon the insured may, upon proper assignment of this policy to the company and the deposit of the policy with the company as security, borrow at any time from the company a total sum not greater than the cash surrender value hereof, less any indebtedness to the company hereon. Any unpaid balance of the premium for the current policy year will be deducted, and interest at a rate not greater than *six per centum per annum* will be charged in advance to the next anniversary of the policy, and annually in advance on that date and thereafter." Also,

"10. AUTOMATIC PREMIUM LOANS. If this policy is not surrendered as provided above, said policy shall not lapse nor become void, providing that the then loan value hereon shall exceed the amount of any premium then unpaid and of any indebtedness of the insured to the company. In such event the company will without request charge the amount of such premium with interest thereon in advance at a rate not exceeding *six per centum per annum,* as a loan against the policy."

The "privileges and provisions" providing for the rate of interest to be charged for loans and advances made upon the policy are thus made a part of the policy, and are a part of the contract of insurance, and are conditions and privileges granted to the insured by the company in consideration of accepting the policy of insurance, and are not privileges or provisions contained in an independent contract. There would be no consideration for the promises made by the company to the insured as to the rate of interest, or the conditions on which these loans are made, were they not a part of the policy of insurance. The company, however, makes such promises and grants such privileges and provisions upon the insured making the promise to pay the company certain sums of money at stated times as a considera-

tion for such insurance, and as part consideration for such promise the company agrees to loan money to the insured on the policy at a certain rate of interest. We are unable to separate the privileges and provisions with reference to the loaning of money by the company and the rate of interest to be charged therefor from the insurance part of the contract. They seem to be a part of the same contract of insurance, and state considerations and conditions upon which and for which the promise of the insured is made. These privileges and provisions named above, together with many others, were inducements, no doubt, held out to the insured, which led him to accept the promises of the company not only to pay the beneficiary named in the policy a certain sum upon the death of the insured, but that during the life of the policy, and before the policy is paid, the company also promises that it will make the insured a loan of money upon the policy, or forbear the collection of dues upon the policy, at a certain rate of interest. Thus the privileges and provisions become an essential ingredient of the contract made between the company and the insured. But counsel argue that such provisions are not peculiar to insurance. Whether the loaning of money was conceived to be a necessary part of an insurance policy when life insurance companies were first organized may be questioned, but it is now common knowledge that all general life insurance companies loan money. That is one of the means by which money is earned, and such earnings are considered by the company in fixing the premium to be charged for the contract of insurance. It is the general policy of life insurance companies to loan money. It is the inducement presented to the insured which may be the particular influence which leads him to take the policy of insurance. But whether or not loaning money is peculiar to life insurance, it must be conceded that it has been made peculiar to the insurance proposed by the statute, and also by the form of policy tendered in this case. It is made, or proposed to be made, an essential feature of the contract of insurance, and is just as much a part of the contract of insurance as the portion which obligates the company to pay

a certain sum upon the death of the insured.   The plaintiff company, when it accepts from the applicant for insurance his application, and from that application writes the policy provided for by the laws of this state, not only is obligated to pay the sum named in the policy, but the company also enters into an obligation by the same contract to loan to the insured, when the policy is deposited as security, a certain sum of money at a fixed rate of interest.

The provisions of the act in question, however, do not attempt to fix the rate of interest that life insurance companies may charge for loans made upon securities other than a life insurance policy, but provide only for loans made to policy-holders, and apply alike to all insurance companies doing business in the state and loaning money on policies issued.   There is no attempt in the legislative enactment to regulate money loaned by insurance companies upon mortgages or other securities, or the rate of interest to be charged therefor.   The legislature has made a classification of persons and corporations writing life insurance within the state of Idaho, and placed in a separate class those persons or corporations who loan money upon policies written, and limits the charge to be made for the use of such loans to five per cent, and all other persons or companies loaning money on other kinds of security are placed in another class and may fix another rate by contract, and in the absence of which another rate is fixed by law.   Our attention has not been called to any provision in the state or federal constitution which limits the power of the legislature in making such classification. This matter has been very fully discussed by the supreme court of the United States in the case of *Fidelity Mutual Life Assn. of Philadelphia v. Mettler,* 185 U. S. 308, 22 Sup. Ct. 662, 46 L. ed. 922, and after quoting many authorities the court says: "The reasoning in *Atchison T. & S. F. R. R. Co. v. Matthews,* 174 U. S. 96, 19 Sup. Ct. 609, 43 L. ed. 909, applies rather than that in *Gulf C. & S. F. R. Co. v. Ellis.* The ground for placing life and health insurance companies in a different class from fire, marine and inland insurance companies is obvious, and we think that putting them in a

different class from mutual benefit and relief associations, doing business through lodges, and benevolent associations of the character mentioned in the Texas statutes, is not an arbitrary classification, but rests on sufficient reason.''

The loaning of money to a policy-holder is not accompanied with the same risk, care and expense which usually accompanies the loaning of money upon other securities, and is made upon the policy alone, and no doubt this fact was a reason why life insurance companies in loaning money were willing to contract for a lesser rate of interest where the loan was made upon the policy than when made upon other securities, and such reason, with others heretofore mentioned, has led such companies to incorporate in the policy of insurance, and to make the same a part thereof, a provision that the company will loan to the insured upon the policy, upon certain conditions, money at a rate of interest less than usually charged by persons and corporations loaning money as an exclusive business, and independent from any insurance contract and upon other kinds of security.

We are unable to discover in the provisions of the statute now called in question any discrimination in violation of either the state or federal constitution. The statute makes a classification of life insurance companies loaning money, and places companies loaning money upon policies in one class and companies loaning upon other securities in another class, and the provisions of the law apply to that classification, and the statute imposes the same requirements upon all companies falling within the same class, whether foreign or domestic corporations, and attempts no discrimination and does not in any way deprive any person of life, liberty or property without due process of law. (*New York Life Ins. Co. v. Hardison,* 199 Mass. 190, 127 Am. St. 478, 85 N. E. 410; *Opinion of Justices,* 97 Me. 592, 55 Atl. 828; *Fidelity Mutual Life Ins. Co. of Philadelphia v. Mettler,* 185 U. S. 308, 22 Sup. Ct. 662, 46 L. ed. 922, and other cases heretofore cited.)

It is also contended in this case that the provisions of the act now in question deprive persons of property without due process of law. There is no attempt on the part of the legis-

lature in such provisions to take any property right of the plaintiff company or any other insurance company desiring to do business within the state of Idaho. The statute has no application whatever to contracts made by insurance companies within the state or to any rights acquired prior to July 1, 1911, and no property rights acquired by insurance companies prior to that date are in any way affected, and the statute leaves entirely to the option of life insurance companies whether they do business within the state after July 1, 1911, and if the company desires to do business within the state after that date, it may do so by complying with the law. These various provisions in no way affect any rights acquired or any contracts made prior to July 1, 1911, and merely prescribe the regulations and requirements after that date, and in no way provide for taking away or denying any property or authorized rights, after such date. As heretofore shown, corporations organized under the laws of other states have no legal existence beyond the limits of the state creating such corporations, and can only carry on or transact business in other states upon the assent of such states, and then upon such terms and conditions as such states may deem proper and prescribe by law; and the fact that the state has enacted a law prescribing the conditions upon which the plaintiff and other insurance companies may do business within this state, and thereby prescribed rules and regulations which are unsatisfactory to the plaintiff, or are different from those prescribed in the state where the corporation is created, is no reason why this state cannot so regulate the doing of business by such corporation within the state.

It is urged in this case that other states have passed laws which provide that insurance companies doing business in such states are prohibited from making contracts in other states upon different terms from those made in such states, or in the states where such insurance companies are created; but this is no reason why a law prescribing different rules and regulations for doing business may not be enacted within the state of Idaho, or a reason for holding the regulations provided by law in this state unconstitutional and void.

Each state has the right to pass its own laws regulating the doing of business by foreign corporations within the state, and the laws of one state have no application to any other state, and cannot limit or circumscribe the power of any other state.

In making such limitations and regulations there is no taking of property or denial of right to contract within the state, and this is especially true when such legislation and regulations are reasonable and affect only contracts made after such legislation becomes effective, and leave it optional on the part of such insurance companies as to whether they will accept the terms and regulations prescribed by the state.

In the case of *New York Life Ins. Co. v. Hardison,* 199 Mass. 190, 127 Am. St. 478, 85 N. E. 410, the supreme court of Massachusetts had under discussion the constitutionality of a statute regulating insurance companies doing business within the state of Massachusetts, and the statute prescribed many conditions and requirements, and the court in that case takes up each one of these regulations and considers the power of the legislature to make the same, and holds the law constitutional, but corrects the form of policy in some particulars. In that case the court recites the provisions of the statute of Massachusetts with reference to interest, and shows that in that state the same provision is made by law requiring that payment of interest upon reinstatements and overdue premiums and arrears may be made with interest at six per cent—practically the same as the statute now under consideration, except that the rate of interest is six per cent while that of this state is five per cent. While the reasonableness or constitutionality of this particular provision of the Massachusetts statute is not passed upon, yet they hold the form of the policy in this regard to be sufficient and within the power of the legislature to prescribe. In this latter case many other cases are cited as to the power of the legislature in regulating the business of insurance.

There is no evidence before this court that loans made and forbearances permitted at the rate of five per cent interest as provided in sec. 42 will be an unreasonable regula-

tion in so far as being too low a rate, or that this rate will not bring a sufficient profit to the company, and in the absence of such proof this court will presume that in fixing said rate the legislature thoroughly investigated its probable effect and its reasonableness, and from such investigation determined the same to be a reasonable rate to be charged for the particular kind and method of the loan. Whether, therefore, insurance companies can write more policies and loan their funds more profitably in other states, and therefore cannot afford to do business in the state of Idaho, is not a reason why this court should set aside the action of the legislature as unconstitutional.

Fourth: Reasonable and fair regulations. There is one other question which counsel for appellant has called attention to which is urged as an unreasonable and unnecessary requirement in the form of the policy, and this relates to the extent of the tables of cash, paid-up and extended insurance options available under the policy, as required in subd. 8 of sec. 42 of the act now under consideration. The plaintiff claims that in the form of policy presented to the defendant the plaintiff substantially complied with this statutory provision by setting out tables for a period of twenty years from the date of the policy. It appears that life insurance companies have for their own convenience of computation, and also because insured persons seldom exceed that age, assumed that ninety-six years is the proper limit of premium payments in ordinary life insurance, or, in other words, that the period of expectancy is ninety-six years, and insurance tables are prepared upon this basis. In the form of policy of plaintiff asked to be approved by defendant, it appears that these computations have been made and appear as a part of the policy tendered in this case for a period of only twenty years. This leaves fifty-six years for which there is no table, and the policy-holder is compelled to send to the company and ascertain from them the value of the remaining years, or figure out such payment himself, and to protect the policy-holder and provide the proper information for him during the period he may live, the statute requires that a table of cash, paid-

up and extended insurance must be shown upon the policy not only for the period of twenty years, but for a period up to the age of ninety-six years, and the company in this instance has not substantially complied with the statute. It seems that the company would be better able than anyone else to figure out these payments, and that it would be very little trouble for them to continue the calculations to the period required by the statute, and that it is not an unreasonable requirement.

Judicial opinion is almost unanimous that the state has a constitutional right to enact laws regulating and limiting the right to do business within a state, and the authority for and manner of carrying on such business, and the question is one for each state to settle, and where the legislature has enacted and prescribed what, to it, are reasonable regulations, this court will be cautious in attempting to discover some imaginary or theoretical reason for annulling such legislation. We have examined this case with reference to the many constitutional objections which counsel for plaintiff has presented, and have attempted in this opinion to cover all such objections, and are unable to discover any constitutional objections to the provisions of the act now under consideration which would render it void or unconstitutional. We understand the rule of law to be elementary that every reasonable construction must be resorted to by the court in order to sustain a statute and uphold its constitutionality. (*Gillesby v. Board of Commrs.*, 17 Ida. 586, 107 Pac. 71; *Kessler v. Fritchman, ante*, p. 30, 119 Pac. 692; *Sabin v. Curtis*, 3 Ida. 662, 32 Pac. 1130; *Doan v. Board of Commrs.*, 3 Ida. 38, 26 Pac. 167.)

The application for writ of mandate is denied. Costs awarded to the defendant.

Ailshie and Sullivan, JJ., concur.