(No. 5479. January 13, 1930.)

JAMES W. WILLIAMS et al., Appellants, v. H. C. BALDRIDGE et al., Respondents, and MILNER LOW LIFT IRRIGATION DISTRICT et al., Intervenors.

[284 Pac. 203.]

M. F. Ryan, for Appellants.

Hodgin & Hodgin, for Intervenor Milner Low Lift Irrigation District.

Walters, Parry & Thoman and J. R. Keenan, for Intervenor North Side Pumping Company.

Rice & Bicknell, Walter Griffiths, F. A. Wilbur, Frank T. Wyman, Frank T. Wyman, Jr., and William Healy, for Intervenors Gem Irrigation District et al.

W. D. Gillis, Attorney General, and Leon M. Fisk, Assistant Attorney General, for Respondents Baldridge et al., file no brief.

GIVENS, C. J.—Appellants, property owners and taxpayers of Gooding county, on behalf of themselves and all

others similarly situated, sought to enjoin respondents from allowing the Idaho Power Company an exemption from taxation under C. S., sec. 3099, as amended by chap. 106, 1921 Sess. Laws, sec. 15, p. 245, and C. S., sec. 3099A, on the ground that said statutes are in violation of secs. 2, 5, 7 and 8 of art. 7 and sec. 13 of art. 1 of the Idaho Constitution, and the Fourteenth Amendment to the Constitution of the United States.

Respondents filed no briefs and the defense of the statutes has been carried on solely by the intervenors.

█ Appellants are financially, though indirectly, affected by the exemption and therefore are proper parties and have the right to bring this action to test its validity. (*State v. Malcom,* 39 Ida. 185, 226 Pac. 1083; 12 C. J. 764.)

█ Appellants' first point of attack on the statutes involved is that they do not create an exemption but lend state aid and credit to private individuals in the nature of a subsidy. If they do, intervenors concede the statutes must fall. (*Gem Irr. Dist. v. Van Deusen,* 31 Ida. 779, 176 Pac. 887.) The statutes were enacted as exemptions and so denominated and we must presume the legislature did not intend to violate the Constitution. (*In re Gale,* 14 Ida. 761, 95 Pac. 679.)

█ Appellant argues that the situation is the same as though the tax had been collected and returned. The same argument could be made against every tax exemption allowed, yet ·the Constitution expressly empowers the legislature to exempt property from taxation. The Constitution, explicitly directing and contemplating that the legislature may grant exemptions, should not be construed to prevent what it allows.

An exemption under secs. 5 and 8 of art. 7 of the Constitution is not a donation or extension of credit prohibited by secs. 2 or 4 of art. 8. In *State v. Snyder,* 29 Wyo. 199, 212 Pac. 771, 777, the court said:

''We have no hesitation, therefore, in declaring that the statute may be properly assumed by the court as having been intended to promote the public welfare, and that it must be regarded as having that effect, and as a statute for

the accomplishment of a public purpose. That being its purpose and effect, it cannot be held, we think, to amount to a violation of the provisions of sec. 6 of art. 16 above quoted. A lawful exemption from taxation cannot, we think, be regarded as a gift or donation to or in aid of the individual, association or corporation in whose favor the exemption is declared. Nor do we find any case holding such an exemption to be violative of such a constitutional provision. It may be assumed that a statute retroactively exempting property upon which a tax had been lawfully assessed or had become due and payable, would be void to that extent. (*In re Stanford's Estate,* 126 Cal. 112, 54 Pac. 259, 58 Pac. 462, 45 L. R. A. 788.) But the statute in question is not to be regarded as intended to act or as acting retroactively. It was clearly intended to apply only to future taxes; and therefore it did not in any sense relinquish any obligation to the state or any political subdivision thereof.''

It was the intention that the benefit of such exemption should accrue immediately to the consumer of power. This was to be accomplished by a credit on the account of each user of any electrical energy produced, the amount of such credit to be determined annually by the Public Utilities Commission. This provision does not alter the status as an exemption statute. Always the effect and often the purpose of exemption statutes is to grant a subsidy. Nor is it always true that the incidence of the subsidy is immediate. The savings effected by the exemption are often passed on to others. A tax exemption to an educational institution inures to the benefit of the students in lessened tuition charges. Therefore the mere fact that the statute outlines a method for carrying into effect that which under ordinary conditions would have taken place anyway—that is, the transfer of the ultimate benefit of the exemption to the consumer—does not change its character as an exemption statute or require us to hold that it grants a subsidy to private individuals in a manner forbidden by the Constitution.

The fact that the exemption benefits irrigation rather than the power company, instead of making the act unconstitutional, is probably the only reason which justifies the exemption. Certainly if the statutes provide for a true exemption and such is constitutional, the fact that the benefit is passed on to the irrigationist works no injury upon appellants. It is fundamental and the basis of appellants' right to bring this action that unless one is injured by an act, he may not question its constitutionality. (1 Willoughby on the Constitution, 2d ed., pp. 12–14.) Appellants, if illegally injured, are so injured not because the exemption inures to the benefit of another than the one to whom the exemption is in the first instance allowed, but because their tax burden is increased because less property in Gooding county is taxed.

The power of the legislature to tax or to exempt from taxation is plenary save only as it may be limited by the Constitutions of this state or of the United States. Unless, therefore, this right has been limited by either the Constitution of this state or the Constitution of the United States, the legislature unquestionably had a right to exempt from taxation certain property of power companies in this state.

If the exemption is in harmony with the state Constitution it does not come under the ban of the Fourteenth Amendment to the federal Constitution, unless the state Constitution in turn does and appellants do not contend the latter, nor is it certain they could.

Section 5 of art. 7 expressly leaves with the legislature its plenary power with regard to exemptions. In this respect, Idaho is almost unique among the western states. We have not attempted a complete search but among western states we believe Wyoming (sec. 12, art. 15, Wyoming Const.) and Idaho (sec. 5, art. 7) are alone in their expressed refusal to limit the plenary power of their legislatures to grant such exemptions as they may see fit. Most states have limited this power to such exemptions

as are expressly enunciated in their Constitutions. Idaho was comparatively late in making its Constitution and the almost uniform practice of other states must have been known to those who wrote the Constitution. We believe sec. 5 of art. 7 is significant as indicating a deliberate intention to leave with the legislature a very broad discretion in dealing with tax exemptions. This conclusion is borne out by a reference to the Constitutional Debates, pp. 1638, 1645, 1660, 1692, 1703, 1721, 1722, 1758–1769, 1775. This court has so held in *Achenbach v. Kincaid*, 25 Ida. 768, 140 Pac. 529.

Appellants' second point is that conceding that the sections of the Constitution under consideration provide a genuine exemption, the statutes are void because sec. 8 of art. 7 does not permit the legislature to exempt corporate property; that under said section the exemption of corporate property, to be effective, must be expressed in the Constitution by reason of the phrase in the above section "and not by this constitution exempted," urging that exemptions must be strictly construed. (*Bistline v. Bassett*, 47 Ida. 66, 62 A. L. R. 323, 272 Pac. 696.)

If the authority granted by sec. 7 of art. 7 be not sufficient to authorize this exemption and if the broad and sweeping language used in *Achenbach v. Kincaid*, 25 Ida. 768, 140 Pac. 529, and the practical construction placed upon these two sections by the legislature since statehood (*Fralick v. Guyer*, 36 Ida. 648, 213 Pac. 337) are not enough to be decisive of the conclusion that property of corporations as well as individuals may by the legislature be exempted, and if there be any ambiguity or uncertainty between these two sections, we may look to the proceedings of the constitutional convention for aid. (*Fralick v. Guyer, supra.*)

In connection with the adoption of art. 7 the following discussion, particularly in connection with sec. 8, took place, reported in the Proceedings and Debates of the Idaho Constitutional Convention, beginning at page 1660:

Mr. Parker moved an amendment of sec. 8 by omitting the phrase "and not by this constitution exempted from taxation."

Mr. Heyburn asked his reasons.

Mr. Parker said: "I have offered this amendment with the idea of having no exemptions in this constitution at all. Here is a clause which provides that certain properties, corporations, etc., may be exempt from taxation. Now, in a democratic government we ought not to have any exemptions whatever."

Mr. Ainslie: "There is no doubt but what it is the disposition of this body, as of any in the mining territories, to exempt mining claims from taxation. You can tax improvements upon them, but I have no doubt it would be the unanimous thing to exempt the claims themselves. Now, corporations may own mining claims the same as individuals, and if you exempt the mining claims themselves, it is necessary for that provision to stay in there, and that will come up tomorrow at nine o'clock when the substitute is submitted by which the property, ground itself, is exempted from taxation; but improvements, machinery, hoisting works and everything of that character will be taxed. I don't believe anybody in the territory expressly contemplates taxing a mine itself, because it may not have anything in it, and it might. You don't know what value to put on it, and I think it is necessary to keep that provision in."

Thereafter the debate continued until, as reported on p. 1769, sec. 5 of art. 7 as it now stands was adopted.

The entire debate set forth.between the pages above mentioned discloses beyond a peradventure of a doubt that the convention desired mining claims, whether owned by individuals or corporations exempted, but instead of expressly exempting them in the Constitution, they empowered the legislature to grant any exemption the legislature saw fit, continuing the exemption then in force until further legislative action.

If the convention had intended to restrict exemptions to privately owned as distinguished from corporation owned

property, the members of that convention would have said so, but they intended and they evidently considered that they had said exactly the opposite because Mr. Parker's amendment striking out the phrase under discussion here, after Mr. Ainslie had said it was necessary to retain it if corporation owned mining claims might be exempted, was rejected. (Page 1660, Debates and Proceedings, *supra*.)

No reason is advanced by appellants why the sections should be construed as desired by them and it is fundamental that if possible we must construe statutes and the Constitution in such a manner to sustain, if possible, the statutes. (*Doan v. Commissioners*, 3 Ida. 38, 26 Pac. 167; *Grice v. Clearwater Timber Co.*, 20 Ida. 70, 117 Pac. 112; *Continental Investment Co. v. Hattabaugh*, 21 Ida. 285, 121 Pac. 81.)

While exemptions are to be strictly construed, a statute must clearly be prohibited by the Constitution before it can be declared in violation thereof. (*Noble v. Bragaw*, 12 Ida. 265, 85 Pac. 903; *Gillesby v. Commissioners*, 17 Ida. 586, 107 Pac. 71.)

Provisions similar to sec. 8 of art. 7 are found in the Constitutions of most if not all of the western states. A cursory view of the history of the period during which these Constitutions were being written sufficiently explains their origin. Various eastern states, in order to induce the rapid introduction of capital, particularly for railroad building, had granted franchises to corporations exempting them for long periods or perpetually from taxation.

It was soon recognized that such a course was inadvisable and it was to guard against such practices that western states inserted provisions in their Constitutions similar to sec. 8 of art. 7.

This knowledge of the background against which this section was written gives a clue to its real meaning. It was designed to prevent the bartering away by contract of the sovereign right of taxation. Indeed many of the similar provisions in other Constitutions provide, in effect, that the

power to tax corporations shall never be relinquished "by contract."

The omission of the phrase "by contract" from our Constitution was probably designed to make the prohibition as broad as possible. But we do not believe that this omission was intended to or did change the essential nature of the provision. That intention was not to require the taxation of all corporations but rather to make all corporations "subject" to taxation. It was not designed to prevent the suspension of a particular tax but rather of the power to tax, a very different matter. The power to tax, or to exempt from taxation, remains with the legislature. The exemption statute under consideration has not contracted or bartered away this power. (*Jackson v. Mississippi Fire Ins. Co.*, 132 Miss. 415, 95 So. 845.)

 Appellants' third position is that the classification is arbitrary, unreasonable and unjust. The statute is clearly general and not special or class legislation. (*Mix v. Commissioners*, 18 Ida. 695, 112 Pac. 215, 32 L. R. A., N. S., 534.)

The remarks of Parker, J., in *State v. Clausen*, 110 Wash. 525, 14 A. L. R. 1133, 188 Pac. 538, are particularly apt in showing that the question of classification within reasonable limits is peculiarly a legislative prerogative. (See, also, 37 Cyc. 885; *Gunkle v. Killingsworth*, 118 Kan. 154, 233 Pac. 803.)

This court said in *Crom v. Frahm*, 33 Ida. 134, 193 Pac. 1013, 1014:

"The classification must be founded on differences either defined by the constitution or such as are natural or intrinsic and reasonable."

 Does the Constitution make a difference as to irrigation or are there natural, intrinsic or reasonable differences? The Constitution does not, but so far as the southern part of the state is concerned, without irrigation, what would be the condition? The answer is obvious. Nature has made an "intrinsic difference" in the treatment necessarily accorded irrigation in the development of this

state and we cannot say that, where since statehood, and before, the people have through their legislatures recognized that the means of applying water for irrigation, where not done for profit, have been excepted from taxation, that it is unreasonable for the legislature to attempt to equalize the burden of applying water to irrigation projects as between gravity and pumping conveyors.

The exemption is made to apply to the property of all power companies used in developing or transmitting electrical energy for pumping water for irrigation purposes with certain exceptions. The pumping method is expensive. By minimizing such expense, land, otherwise unfit for cultivation is made available for settlement. It is well recognized that where the plenary power of the legislature to exempt from taxation has not been limited by a constitutional provision, it may exercise this power to encourage private initiative and thereby further the public welfare.

A classification for purposes of exemption must not be arbitrary. In view of the climatic conditions in this state and the necessities of agriculture we do not believe that a tax exemption statute designed to permit a wider use of electrical energy for irrigation purposes raises a classification so arbitrary and discriminatory as to be merely capricious.

Appellants' fourth and last point is that taking the funds resulting from the exemption from the Idaho Power Company and giving it to the irrigationists is depriving the power company of its property without just compensation in violation of sec. 13 of art. 1 of the Idaho Constitution and the Fourteenth Amendment of the Constitution of the United States.

As indicated in the discussion with reference to appellants' first point, they do not show that they are in a position to urge this contention; hence it becomes unnecessary to pass upon the same.

The judgment is affirmed. Costs awarded to respondents.

Budge, T. Bailey Lee and Varian, JJ., concur.